JOHN J. OCEJO, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ocejo v. Commissioner
Docket No. 20558-81
United States Tax Court
T.C. Memo 1983-48; 1983 Tax Ct. Memo LEXIS 738; 45 T.C.M. (CCH) 584; T.C.M. (RIA) 83048; January 26, 1983. Chester Kosarek, for the petitioner. Richard J. Sapinski, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: This case was assigned to and heard by Special Trial Judge Darrell D. Hallett pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *739 OPINION OF THE SPECIAL TRIAL JUDGE
HALLETT, Special Trial Judge: Respondent determined a deficiency in petitioner's 1979 Federal income tax in the amount of $8,206.51 and imposed an addition to tax as provided by section 6653(a) in the amount of $410.33. The issues for decision are (1) Whether salary earned by petitioner during 1979 is taxable to him; and (2) whether petitioner is liable for the addition to tax provided by section 6653(a). At the time of the filing of the petition in this case petitioner resided at 279 Roseville Avenue, Newark, New Jersey. During the year 1979, and prior thereto, petitioner was employed as a corrections officer by the Essex County Sheriff's Department and he worked as a security guard for the Worthington Pump Corporation. Petitioner's 1979 wages amounted to $23,878.81 from his employment as a corrections officer and $252 from his employment with Worthington Pump Corporation. Petitioner also had interest on savings accounts he owned during 1979 in the amount of $847.20. On or about March 13, 1980 and April 14, 1980, petitioner filed 1979 Forms 1040 with respondent [3]. On these forms, petitioner reported the wages and *740 interest income earned by him during 1979. However, petitioner claimed he had no tax liability and he claimed a refund for the tax withheld from his wages during the year. Petitioner indicated on the forms that he was an "agent and licensed ordained minister under a Vow of Poverty" of the Freedom Church of Revelation. During 1979, petitioner had no written employment contract in effect regarding the services he performed for his employers. He performed the services in his individual capacity pursuant to an arrangement between him and his employers. His employers did not enter into any agreement or arrangement with any other entity concerning petitioner's services. During 1979, petitioner became associated with the Freedom Church of Revelation. He purported to become a minister of a subsidiary congregation of that organization, i.e., Freedom Church of Revelation Congregation Number 00277. In connection with this association petitioner received a document entitled "Letter of Directions" which purported to direct him, as a minister of the Freedom Church of Revelation, to perform certain *741 duties and obligations. Included in these duties and obligations was a direction that petitioner "turn over income to your church chapter to carry out the religious purposes of this Church." The document also stated that as part of petitioner's duties he was "to become gainfully employed in constructive employment and to use the remuneration gained therefrom and to use [his] occupation as a corrections officer, and security guard, at all times as an Agent, Minister, and Missionary of this Church and Order, and not in [his] individual capacity." Petitioner received another document dated October 29, 1979, entitled "Sacramental Authority." That document purported to confer upon petitioner authority to perform ministerial duties, including marriages and baptisms. Finally, petitioner executed a document dated December 31, 1979, entitled "Vow of Poverty" wherein petitioner purported to assign all of his possessions to the Freedom Church of Revelation. On or about December 13, 1979, petitioner established a checking account in the name of the Freedom Church of Revelation, Congregation Number 00277. In connection with establishing this account petitioner executed a document showing *742 that the directors and officers of the Freedom Church of Revelation were himself, his present wife, and his brother. Checks drawn on the account required the signature of petitioner and either his brother or his present wife. After the account was established, petitioner deposited his paychecks into it and paid his personal living expenses out of it. Petitioner's sole contention in support of his argument that respondent erroneously determined that his salary and interest income are taxable to him for 1979 is that he was a duly ordained minister, and, as such, the salary he earned and the interest income on his savings accounts were not taxable to him, but properly belonged to the church. Petitioner contends that the income he earned during the taxable year was earned by him as an agent for the church and not in his individual capacity. In a case involving a similar factual situation, McGahen v. Commissioner,76 T.C. 468, 478 (1981), on appeal (3rd Cir. Aug. 24, 1981), we stated: A member of a religious order under a vow of poverty is not immune from Federal income tax by reason of his clerical status or his vow of poverty, but is subject to tax to the same *743 extent as any other person on income earned or received in his individual capacity. Kelley v. Commissioner,62 T.C. 131 (1974); Rev. Rul. 77-290, 1977-2 C.B. 26. Further, in that case we rejected the argument made by petitioner, which is identical to the argument made by petitioner in this case, that his salary was earned as an agent of the church and not in the petitioner's individual capacity and stated in this regard, McGahen v. Commissioner,supra at 478-479: When an agent receives income for a principal, it is the income of the principal, not the agent. Maryland Casualty Co. v. United States,251 U.S. 342 (1920). Likewise, when a member of a religious order receives income on behalf of that order and, pursuant to a vow of poverty, turns it over to the order, it is the income of the order and not the member.Where, however, there is no agent-principal relationship, it is a basic rule of tax law that an assignment by a taxpayer of compensation for services to another person is ineffectual to relieve the taxpayer of Federal income tax liability on such compensation regardless of the motivation behind the *744 assignment. Lucas v. Earl,281 U.S. 111 (1930). See also Helvering v. Horst,311 U.S. 112 (1940); Helvering v. Eubank,311 U.S. 122 (1940). This is where petitioner's argument collapses. The income received by him was not received on behalf of a separate and distinct principal, but was received by him in his individual capacity. Although he made a vow of poverty, the manner in which he handled his economic and financial affairs was the same as it was before he was ordained and chartered as a "church personally." He had no limitations on the use of his earnings. There was no accounting to assure the frugal and ascetic life of one who takes a vow of poverty of what was earned and how it was spent. * * * In fact, petitioner's case here is even weaker than that of the petitioner involved in McGahen v. Commissioner. In this respect, it was not until December 1979 that petitioner even purported to establish a bank account in the name of the church and handle his financial affairs through that account. There is no evidence in the record to show that throughout most of the tax year 1979 petitioner's salary checks were not simply *745 handled in his own name (the evidence shows that in October 1979, petitioner did in fact establish a bank account solely in his own name and deposited payroll checks to it and wrote personal checks upon it). In any event, consistent with our holding in McGahen v. Commissioner, even if petitioner had established the account earlier in the year, his maintenance of dominion and control over the account and use of it for his personal purposes, as well as his earning of his salary in his individual capacity, would preclude the result that petitioner seeks to reach. Specifically as regards petitioner's interest income from the savings accounts, the evidence shows that these accounts were in petitioner's individual name during 1979, and his was the authorized signature on the accounts. Petitioner has totally failed to prove that he did not have ownership as well as dominion and control over the accounts. Accordingly, the interest on the accounts is clearly taxable to him. Respondent also asserted the addition to tax provided by section 6653(a), and contends that petitioner was either negligent or intentionally disregarded respondent's rules and regulations. We agree. Although *746 petitioner contends that he excluded his salary and interest income from his 1979 taxable income in good faith, the evidence belies this contention. Petitioner's treatment of his income on his tax return is at best wishful thinking and at least intentional disregard of the rules and regulations. [4]
Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment and on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable in this case.
3. The record does not explain why petitioner filed two Forms 1040 for the same year.↩
4. We recently sustained respondent's assertion of the 50 percent addition to tax due to fraud provided by section 6653(b) in a case involving a purported minister of the "Life Science Church" and involving circumstances very similar to those involved here. Stephenson v. Commissioner,79 T.C. 995↩ (1982)