RICHARD R. VENNI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Venni v. Commissioner
Docket No. 23846-81.
United States Tax Court
T.C. Memo 1984-17; 1984 Tax Ct. Memo LEXIS 657; 47 T.C.M. (CCH) 874; T.C.M. (RIA) 84017; January 10, 1984. James V. Tamburro, for the petitioner. Caroline R. Ades, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency of $1,127 in petitioner's 1979 Federal income taxes and an addition to tax under section 6651(a)(1) [1] of $56.35. By an amended answer, respondent also asserted that petitioner is liable for an addition to tax under section 6653(a) of $56.25. The issues for decision are *659 as follows: (1) Whether a purported "vow of poverty" allegedly taken by petitioner in his alleged capacity as a "minister" of a local congregation of Freedom Church of Revelation, renders petitioner's 1979 wages exempt from Federal income tax; (2) whether, in the alternative, petitioner is entitled to deduct, under section 170, all or a portion of his 1979 wages as charitable contributions; (3) whether petitioner is liable for additions to tax under sections 6651(a)(1) and 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of fact, together with the exhibits attached thereto, are incorporated herein by this reference. [2]
*660 Richard R. Venni, (hereinafter "petitioner"), a calendar year taxpayer, resided at Apollo Beach, Florida, when the petition was filed in this case. On April 7, 1980, petitioner filed a 1979 Form 1040 document with the Internal Revenue Service Center at Holtsville, New York. On the face of this document, petitioner typed the following: I'm an Agent & licensed Ordained Minister under Vow of Poverty of Freedom Church of Revelation, Ho Hokus, NJ, I.D. 22-224-7325 and have been directed to perform my sacerdotal functions on job which is ordinarily the duties required by my Ecclesiastical Superiors and have been directed to remit all funds to this Order. Therefore I am exempt as Agent of the Church pursuant to 26 U.S. Code 3401(a)(9). Copy of assignment attached. On this document, petitioner also listed $8,990.05 as wages on line 8, as total income on line 22, as adjusted gross income on lines 31 and 32 and as taxable income on line 34. Petitioner also listed $599.26 as Federal income tax withholding and $550.57 as excess FICA withholdings on line 59, and claimed a refund of $1,149.83 on lines 62, 63 and 64. All other lines on this document were labeled *661 "N/A" by petitioner. By letter dated April 21, 1980, the Internal Revenue Service advised petitioner that the above-referenced document was not considered acceptable as an income tax return for the year 1979. On May 13, 1980, petitioner filed a second 1979 Form 1040 document with the Internal Revenue Service Center at Holtsville, New York. This document was identical to the first except that petitioner, on Schedule A and on line 33, claimed his total wages, less the zero bracket amount of $1,700, as a charitable contribution deduction, and showed zero as his tax on line 35. Respondent treated the second Form 1040 as petitioner's 1979 Federal income tax return, and determined a delinquency addition to tax under section 6651(a)(1) against petitioner on the ground that petitioner failed to file a 1979 return until May 13, 1980. During the year 1979, petitioner was employed as a truck driver and as a fireman. Petitioner received total combined wages of $8,990.05 from this employment. During 1979, petitioner became associated with the Freedom Church of Revelation (hereinafter FCR). [3] On September 1, 1979, petitioner received from FCR a "certificate of ordination" which *662 purported to constitute him a "minister" of FCR. On the same day, petitioner received another document from FCR labeled as a "charter" which purported to establish a local congregation of FCR, described as local congregation No. 00230, (hereinafter "local congregation No. 00230") at 6201 Fairway Blvd., Apollo Beach, Florida (hereinafter "the Fairway Blvd. address"). The Fairway Blvd. address was petitioner's residence in 1979. *663 In connection with petitioner's association with FCR, petitioner also received a document entitled "Letter of Direction" which purported to direct him, as a minister of FCR, to perform certain duties and obligations. Included in these duties and obligations was a direction that petitioner "turn over income to your Church Chapter to carry out the religious purposes of this Church." The document also stated that, as part of petitioner's duties, he was "to become gainfully employed in constructive employment and to use the remuneration gained therefrom, and to use [his] occupation as a truck driver at all times as an Agent, Minister, and Missionary of this Church and Order and not in [his] individual capacity." Petitioner also received a document entitled "Sacramental Authority." This document purported to confer on petitioner authority to perform various ministerial duties. Finally, petitioner executed a document dated November 5, 1979, entitled "Vow of Poverty" wherein petitioner purported to assign all his possessions, and income, past, present and future, to local congregation No. 00230. During 1979, petitioner had no written employment contract in effect regarding the services *664 he performed for either of his employers. He performed the services in his individual capacity pursuant to agreements between him and his employers. His employers did not enter into any agreement or arrangement with any other entity concerning petitioner's services. Local congregations of FCR are controlled and "managed" by the local congregation's board of trustees. The boards of trustees of the local congregations therefore exercise complete control over any expenditures made by local congregations of "donated" funds and FCR does not generally concern itself with expenditures of funds by the local congregations. Thus, as applicable during the years in issue, the articles of association of FCR provided in pertinent part as follows: 6. The Local Churches. The local churches or congregations of the Church are chartered by the presiding Bishop who may revoke such charters for good cause shown. Each local church is headed by a minister, who is trustee and corporate sole thereof, and each local church shall be an autonomous religious body under the spiritual authority of the church. Each local church shall have sole control over its property real and personal, pursuant *665 to the general oversight of the staff and these articles. * * * [Emphasis supplied.] A booklet published by FCR, setting forth its basic beliefs and organizational structure, provided in pertinent part: THE ESTABLISHMENT AND FINANCIAL MAINTENANCE OF A LOCAL FAMILY CONGREGATION Freedom Church of Revelation charters local Family Congregations. Each local Congregation has one or more ministers, licensed, commissioned and ordained by investiture (public oath) to manage each Congregation with a Board of Trustees. Each local Congregation is maintained by voluntary contributions. Ministers… as Trustees… pay all congregational expenses, except food and servants, according to Parsonage Allowance, 26 U.S.C. § 107. (See I.R.S. Publication 525) Since a Church consists of people, and since two or more people constitute a Congregation of a church, Ministers of local Congregations should support themselves by outside secular employment and donate up to 50% of their adjusted gross income to the local Congregations until such time as the local Congregation can expand to such an extent that the Minister can devote full time to the services of the Congregation.
*666 On November 6, 1979, petitioner opened a checking account and a savings account at The First Ruskin Bank of Ruskin, Florida, in the name of local congregation No. 00230. The authorized signatories for these accounts were petitioner (as "president and trustee" of local congregation No. 00230), his wife Joan (as "trustee") and his father-in-law, Patsy Conti, (as "trustee"). These accounts received total deposits of $4,868.10 against total debits of $4,089.92 during 1979. Any two of the enumerated signatories on these accounts had authority to withdraw funds from the accounts. Respondent determined that all of petitioner's 1979 wage income was taxable to him and that petitioner was not entitled to deducations for charitable contributions to any extent. Additionally, as noted above, respondent determined that petitioner was liable for an addition to tax under section 6651(a)(1). By amended answer, respondent also determined that petitioner was liable for additions to tax under section 6653(a). OPINION Petitioner offers two contentions in support of his argument that respondent's deficiency determination is erroneous. First, petitioner contends that he was a duly ordained *667 minister of FCR, had taken a "vow of poverty" and as such, the salary he earned during 1979 was not taxable to him, but properly belonged to FCR. Since petitioner clearly received the wages in issue herein, we take petitioner's argument to be that he received such wages not in his individual capacity, but as agent of FCR. Second, petitioner contends that even if the wages he received in 1979 were his income, he should be entitled to claim the entire amount of such wages as a charitable contribution deduction. Petitioner bears the burden of proof with respect to both of these contentions. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). We shall address each of petitioner's arguments in turn. Petitioner's contention that his status as a "minister" of FCR, in conjunction with his "vow of poverty," without more, insulates him from Federal income taxation, must be rejected. In a case involving similar facts to the present case, McGahen v. Commissioner,76 T.C. 468 (1981), affd. by unpublished order (3d Cir. Aug. 25, 1983), we stated (at 478): A member of a religious order under a vow of poverty is not immune from Federal income tax by reason *668 of his clerical status or his vow of poverty, but is subject to tax to the same extent as any other person on income earned or received in his individual capacity. Kelley v. Commissioner,62 T.C. 131 (1974); Rev. Rul. 77-290, 1977-2 C.B. 26. Moreover, we further rejected, on similar facts to those presented herein, any contention that the taxpayer had earned the income in dispute in any capacity other than his individual capacity. Thus, we stated in McGahen v. Commissioner,supra at 478-479: When an agent receives income for a principal, it is the income of the principal, not the agent. Maryland Casualty Co. v. United States,251 U.S. 342 (1920). Likewise, when a member of a religious order receives income on behalf of that order and, pursuant to a vow of poverty, turns it over to the order, it is the income of the order and not the member. Where, however, there is no agent-principal relationship, it is a basic rule of tax law that an assignment by a taxpayer of compensation for services to another person is ineffectual to relieve the taxpayer of Federal income tax liability on such compensation regardless *669 of the motivation behind the assignment. Lucas v. Earl,281 U.S. 111 (1930). See also Helvering v. Horst,311 U.S. 112 (1940); Helvering v. Eubank,311 U.S. 122 (1940). This is where petitioner's argument collapses. The income received by him was not received on behalf of a separate and distinct principal, but was received by him in his individual capacity. Although he made a vow of poverty; the manner in which he handled his economic and financial affairs was the same as it was before he was ordained and chartered as a "church personally." He had no limitations on the use of his earnings. There was no accounting to assure the frugal and ascetic life of one who takes a vow of poverty of what was earned and how it was spent. * * * See also Ocejo, Jr. v. Commissioner,T.C. Memo. 1983-48; Noberini v. Commissioner,T.C. Memo. 1983-49. In this case, we find no convincing proof that petitioner's wages were received by him as an agent for his local congregation rather than under claim of right in his individual capacity. There is no evidence that either FCR or local congregation No. 00230 exercised *670 any control over petitioner's employment, either as to its nature or its terms, beyond the general instruction by FCR to petitioner that he should be gainfully employed, and that he should use his "job and work, regardless of the nature and extent of it, as a vehicile [sic] and instrument to carry out and put into effect the principles and teachings of this Church by practicing the Golden Rule and by setting a good example." Equally unconvincing was petitioner's "Vow of Poverty." Although stating that compensation received by petitioner for his labor was to be treated as received by him as agent for local congregation No. 00230 and no in his personal capacity, we find this unilateral and self-serving declaration by petitioner unconvincing in the totality of the facts as disclosed by this record; for aught that appears in this case, there were no members of local congregation No. 00230, beyond petitioner, his wife and his father-in-law. Moreover, petitioner has not established that he handled his economic and financial affairs any differently after he signed the "vow of poverty" document on November 5, 1979, than he did prior to that time. There is also no evidence in this *671 record which would suggest any limitation on petitioner's use of his earnings after he received the document that purported to render him a "minister" of FCR in September 1979; clearly no such limitation was imposed prior to that time. Finally although petitioner opened a checking account on November 6, 1979, in the name of local congregation No. 00230, he has not established that he did not use the funds deposited in this account for personal purposes. On this record we must therefore conclude that petitioner received his 1979 wage income in his individual capacity, and not as agent of FCR or local congregation No. 00230. McGahen v. Commissioner,supra;Ocejo, Jr. v. Commissioner,supra. As we said under similar facts in Noberini v. Commissioner,supra:
Petitioner has not sustained her burden of proving here that she did anything more than earn her salary, use it to pay her personal living expenses, and execute some documents which she contends, by their mere execution, made her activites those of a "church." Petitioner's second argument is that he should be entitled to deduct as a charitable contribution the *672 entire amount of his 1979 wage income. With respect to these alleged contributions, it is petitioner's apparent position that local congregations of FCR are integral and inseparable parts of the parent FCR. Moreover, petitioner apparently maintains that the parent FCR qualified as a valid section 501(c)(3) organization during the years in issue and that respondent erroneously revoked its exempt status on September 30, 1982, effective for all years beginning after December 31, 1978. Petitioner would therefore have us find that the parent FCR's alleged tax exempt status extended to local congregation No. 00230, and that the purported contributions of property by petitioner to local congregation No. 00230 qualified as charitable contributions under section 170(c)(2). We cannot agree with petitioner's conclusion that the parent FCR's Federal tax status is in any way determinative of the Federal tax status of the local congregations, because it is clear from this record that the local congregations were separate and distinct from the parent FCR. Although petitioner's witness testified in general terms that FCR and its local congregations were "one church," he also specifically testified *673 that local congregations of FCR, or, more precisely, the "boards of trustees" of such local congregations, exercise complete control over expenditures of funds transferred to the local congregations. Moreover, although petitioner's witness testified that the "international treasurer" of FCR was empowered to "call in any financial statements of any congregation at any time for verification," there is no indication in this record that such authority was ever exercised or, if exercised, that any actual limits were ever placed upon the local congregations by FCR with respect to expenditures of their funds. Such authority, if it existed at all, was therefore largely illusory. Finally, the articles of association of FCR specifically state that the local congregations of FCR "shall be… autonomous religious bodies" and that "[e]ach local church shall have sole control over its property real and personal…" On these facts it is clear that the local congregations of FCR were legally distinct from the parent FCR. Cf. Basic Bible Church v. Commissioner,74 T.C. 846, 856 (1980). Petitioner must therefore prove that local congregation No. 00230 independently qualified *674 under section 170(c)(2) in order for alleged contributions to that entity to qualify as charitable contributions under section 170, and evidence of the parent FCR's alleged exempt status is immaterial to a determination of the local congregation's qualification. [4]Basic Bible Church v. Commissioner,supra at 856. Petitioner bears the burden of proving that local congregation No. 00230 qualified under section 170(c)(2). Welch v. Helvering,supra; Rule 142(a). One of the requirements for an organization's qualification under section 170(c)(2) is that no part, however small, of the net earnings of the organization inure to the benefit of any private shareholder or individual. Section 170(c)(2)(C); Miedaner v. Commissioner,81 T.C. 272 (1983); McGahen v. Commissioner,76 T.C. at 482; *675 Unitary Mission Church of Long Island v. Commissioner,74 T.C 507, 513 (1980), affd. 647 F.2d 163 (2d Cir. 1981). Petitioner has presented no evidence in this case which would establish that the net earnings of congregation No. 00230 did not inure to his private benefit. Petitioner did not testify in this case. Moreover, although petitioner opened a checking account in the name of local congregation No. 00230 on November 6, 1979, and made deposits thereto, it was certainly within his authority, in conjunction with his wife, to withdraw funds from that account and use such funds for personal purposes. In fact the record shows that total debits of $4,089.92 were made against this account during 1979 and nothing in the record establishes how these funds were spent. Under these circumstances we must conclude that petitioner has failed to sustain his burden of proving that local congregation No. 00230 qualified under section 170(c)(2). Accordingly, the alleged contributions made to that organization during 1979 are not deductible under section 170, and we will sustain respondent's determination to that effect. We now turn to respondent's determination *676 that petitioner is liable for an addition to tax under section 6651(a)(1). Section 6651(a)(1) provides that a taxpayer who fails to file a timely return will be liable, for each month the return is overdue, for an addition to tax of five percent of the amount required to be shown as tax on the return, up to a maximum addition of 25 percent. The addition will not be applied if the taxpayer shows that the delinquency was due to reasonable cause and not willful neglect. Petitioner bears the burden of proof with respect to this issue. Rule 142(a); Welch v. Helvering,supra.
Respondent contends that the Form 1040 filed by petitioner on April 7, 1980, did not constitute a valid return and argues that only the second return filed by petitioner on May 13, 1980, constituted a valid return. Accordingly, respondent maintains that petitioner is liable for an addition to tax of $56.35 (i.e., five percent of $1,127) under section 6651(a)(1). It has been repeatedly stated that a document constitutes a valid return if "it contains sufficient data from which respondent can compute and assess a tax liability." White v. Commissioner,72 T.C. 1126, 1129 (1979); *677 McCaskill v. Commissioner,77 T.C. 689, 697 (1981). The Form 1040 filed by petitioner on April 7, 1980, reflected his gross income as $8,990.05. Respondent has not determined that petitioner had income in excess of $8,990.05. Moreover, petitioner specifically stated on the face of his return that, although he received income in the amount stated above, it was his position that the income he received was exempt from tax. Although, as we have decided above, petitioner's position was clearly erroneous, this Form 1040 nevertheless contained "sufficient data from which respondent could compute and assess a tax liability." White v. Commissioner,supra at 1129. Accordingly, under the particular circumstances herein we conclude that it was a valid return, timely filed, and we therefore will disallow respondent's determination of an addition to tax under section 6651(a)(1). [5]
The final issue for decision is whether petitioner is liable for an addition to tax under section 6653(a). *678 Because this issue was raised by respondent for the first time in an amended answer, respondent bears the burden of proof with respect thereto. Rule 142(a). Section 6653(a) imposes a five percent addition to tax for an underpayment of tax if any portion of the underpayment is due to negligence or intentional disregard of rules and regulations. Respondent maintains that petitioner's failure to pay Federal income taxes on amount received by him in his individual capacity, and which remained subject to his dominion and control throughout the 1979 tax year, constitutes negligence or intentional disregard of rules and regulations. We agree with respondent. The record clearly establishes that the position petitioner chose to take on his 1979 return which resulted in the underpayment of tax, was "at best wishful thinking and at least intentional disregard of the rules and regulations." Ocejo, Jr. v. Commissioner,T.C. Memo. 1983-48, 45 T.C.M. 584, 587, 52 P-H Memo T.C. par. 83.048, at 142 (1983) (footnote omitted). The addition to tax under section 6653(a) will be sustained. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references herein are to sections of the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all references to Rules are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. The testimony of Jerome Ernest Heineman, together with exhibits received through his testimony, as received at the trial of Stojalowsky v. Commissioner,↩ Docket No. 24373-81, was stipulated into evidence herein as though the same had been offered at the trial of this case.
3. On June 8, 1979, the District Director of Internal Revenue, Newark, New Jersey, sent a letter to the parent Feedom Church of Revelation located at Hohokus, New Jersey, which stated in pertinent part: Based on information supplied, and assuming your operations will be as stated in your application for exemption, we have determined that you are 501(c)(3) of the Internal Revenue Code. The tax exempt status of the parent Feedom Church of Revelation was retroactively revoked effective for all tax years beginning with the year ended December 31, 1978, by letter dated September 30, 1982, from the Acting Associate Chief of the Internal Revenue Appeals office, Mid-Atlantic Region. The parent Freedom Church of Revelation is currently challenging the Internal Revenue Service's revocation of its exempt status in the District Court of the District of Columbia, pursuant to sec. 7428(c). Freedom Church of Revelation v. United States,↩ Docket No. 82-3675 (D.D.C., filed 12/18/82).
4. Petitioner cannot seriously contend that the exemption letter issued to the parent FCR on June 8, 1979, which was subsequently revoked by the Internal Revenue Service, constituted a group ruling applying to all local congregations of FCR. In any event it is clear that such exemption letter was not a group ruling but rather applied only to the parent FCR.↩
5. We note that this return contained just as much information as the second return filed by petitioner for 1979, which respondent did↩ accept as a valid return.