OPINION Baum, Judge: Section 61(a), I.E.C. 1954,[1] defines gross income as “all income from whatever source derived.” It is a well-settled principle of our tax law that this broad language was meant to include in gross income “all gains except those specifically exempted.” Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430. See sec. 1.61-1, Income Tax Kegs. At issue is whether certain amounts received by petitioner prior to August 2, 1968 (the date of his marriage), as wages for teaching at Merrimack College and Northern Essex Community College, and as commissions for selling securities for Security Investment Services, are excludable from his gross income for that year. It is clear that these amounts fall within the broad scope of section 61 (see sec. 61(a) (1); sec. 1.61-2(a) (1), Income Tax Bogs.), and that they must, therefore, be included in gross income unless petitioners can carry their burden of showing why these amounts should be excluded. Petitioner argues that he was acting as an “agent” of the Dominican Order when he received the amounts in issue; that he was subject at all times to his “vows of obedience and poverty”; that the order was aware at all times of where he was living and working and of his approximate salary; and that he received these amounts directly only to avoid the unnecessary step of giving the funds to the order and then having the order return them to him to allow him to pay his living expenses. In support of this position petitioner relies upon O.D. 119, 1 C.B. 82, and Rev. Rul. 68-123, 1968-1 C.B. 35. But whatever force may be attributed to these rulings on the basis of the facts assumed therein, they are not applicable here, for, in our judgment, petitioner has not shown that he was acting as an “agent” of the Dominican Order in 1969 in respect of the services performed by him or the compensation that he received therefor. The “agency” argument is based on the notion that petitioner’s living expenses during this period were actually being provided for by the order. It was simply more convenient for him to retain and use the money which he had earned than it was for him to give this money to the order only to have them return it to him. In essence, petitioner argues that he received these funds as a mere “collecting agent” for the order, which allowed him to retain them for administrative simplicity. This position, however, is simply not supported by the facts. Petitioner was not living as a Dominican priest during 1969. He had requested permission to live apart from the order and this permission had been granted. ITe was relieved from certain specific religious duties and he wore nonclerical clothing. He earned a salary which he used to support himself. With, the money he received from his various jobs he paid his rent, made payments on a loan he obtained to purchase a car, bought his own food and clothes, and even deposited any small remaining funds in a savings account. There were no limitations on the use which he could make of his earnings. He never made any accounting to the order of what he earned or how he spent those earnings. Indeed, petitioner never even informed the order of his jobs with Northern Essex Community College and Security Investment Services, or of the extra income he derived therefrom. To the extent that petitioner was subject to “vows of poverty and obedience” during this period, he could, .as a practical matter, avoid the effect of those vows simply by deciding that he wished to leave the order. Indeed, petitioner married before he received permission to marry. While this act may have violated his “vow of obedience,” it also automatically severed his ties with the order, thereby destroying the effect of that vow. Moreover, petitioner received no specific orders or instructions from the Dominican Order in 1969, a further indication that in the circumstances his “vow of obedience” lacked substance as a practical matter. Finally, when petitioner left the order ho retained all of the material possessions ho had accumulated while living apart from the order (e.g., clothing, automobile, savings account, etc.), despite his “vow of poverty.” In light of these facts, we cannot say that petitioner was acting as an “agent” of the Dominican Order when he received the amounts in issue.[2] Accordingly, since these amounts are clearly within the scope of section 61 (a), they are includable in petitioners’ gross income for 1969. In order to correct an apparent computational error in the deficiency notice,[3] Decision will be entered wnder Buie 155. SEC. 61. GROSS INCOME DEFINED. (a) Genbbal Definition. — Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, and similar items; The “agency” argument is further weakened by the fact, as disclosed by the evidence, that although petitioner is also seeking refunds for the taxes paid on his earnings for 1967 and 1968, the order has not asked him to pursue this matter, nor does it appear to have a claim to, or to be interested in, any refund for those years which petitioner might receive. In the deficiency notice the Commissioner added the $6,445 in issue to petitioners’ taxable Income, without increasing their standard deduction. This amount should, however, be added to petitioners’ gross income, and their standard deduction increased accordingly.