ALVIN L. FORD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, RespondentFord v. CommissionerDocket No. 11965-82.United States Tax CourtT.C. Memo 1984-501; 1984 Tax Ct. Memo LEXIS 175; 48 T.C.M. (CCH) 1173; T.C.M. (RIA) 84501; September 18, 1984. Alvin L. Ford, pro se. Charles W. Maurer, Jr. and Willard J. Frank, for the respondent. FEATHERSTON MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON. Judge: This case was assigned to Special Trial Judge Lee M. Galloway pursuant to the provisions of section 7456 of the Code 1 and Rule 180, 2etseq. The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE GALLOWAY, Special Trial Judge: Respondent, in his notice of deficiency mailed to petitioner on March 5, 1982, determined deficiencies in petitioner's Federal income tax and additions to tax for the calendar years and the amounts as follows: ADDITIONS TO TAXYEARDEFICIENCYSEC.6651(a)SEC.6653(a)SEC.66541978$ 5,588.39$ 726.46$ 279.4219798,480.301,893.95424.023 $306.15198012,706.832,996.72635.34$26,775.52$5,617.13$1,338.78$306.15*177 The issues presented for decision are: (1) Whether petitioner is subject to income tax on wages earned by him in 1978, 1979 and 1980, regardless of the taking by petitioner of a vow of poverty; (2) Whether petitioner is liable for an addition to tax under section 6651(a) for failure to file a tax return; (3) Whether petitioner is liable for an addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations; and (4) Whether damages should be awarded under section 6673 for petitioner instituting a proceeding before this Court merely for delay. FINDINGS OF FACT Some of the facts are stipulated and are so found. The case was tried at New York, N.Y., on August 26, 1983. Petitioner resided at 1024 Ferndale Boulevard, Central Islip, New York, at the time his petition was filed. During the taxable year 1980, petitioner was employed by the New York City Transit Authority (City Transit) as a patrolman and supervisor. Petitioner's position with City Transit did not involve any religious*178 duties during the taxable years 1978, 1979 and 1980. Petitioner's duties with City Transit were the same throughout the entire three years in issue. City Transit did not negotiate with any church or religious organization regarding petitioner's services nor was there a contract or other agreement between City Transit and any church or religious organization regarding petitioner's services. Petitioner performed services for City Transit during the taxable years 1978, 1979 and 1980 in his individual capacity. City Transit issued petitioner W-2 Forms at the end of each of the years 1978, 1979, and 1980, which reflected the amount of wages earned in those years and amounts withheld for Federal, state and local income taxes and Federal social security taxes. The wages paid to petitioner for his services as a patrolman and supervisor were paid by City Transit to petitioner with no restriction as to their use. Petitioner's earned wages were used by him to pay his personal, family and living expenses. During the years in issue, petitioner was married and had two children. Petitioner filed Forms 1040 (U.S. Individual Income Tax Return) for the taxable years 1978, 1979 and 1980, *179 which show only his name (Reverend Alvin L. Ford), address, and social security number. The Forms 1040 show no occupation, filing status or claim for exemptions; no gross, adjusted gross or taxable income; and no income tax liability. A Wage and Tax Statement (Form W-2) was attached to each Form 1040. All Forms W-2 were issued by City Transit and addressed to "A. L. Ford." At the bottom of page 1 of Form 1040 prepared for 1978 is the handwritten statement "NOTE: I have taken a Vow of Poverty (copy attached) and am an agent for my church and am therefore exempt from Federal Income tax." 4 The only entry on page 2 of the Forms 1040 filed for the years 1978, 1979 and 1980 is the income tax withheld of $2,682.55, $904.52 and $719.95, respectively, for which petitioner claimed refunds in full. No other document purporting to be a Federal income tax return was filed by petitioner with respondent for the taxable years 1978, 1979 and 1980. The "Vow of Poverty" attached to the Form 1040 filed by petitioner for the taxable year 1978 is a printed document which was executed by petitioner before a notary public on December 29, 1978. This form document contains blank spaces for insertion*180 of the signator's name, address and the chapter number assigned by the Life Science Church. The document states in part: REV. ALVIN L. FORD, having been first duly sworn upon oath states that this is a Declaration of the gift to the Church or Order herein named, of all possessions of every description now owned or hereafter acquired to be administered by the Church or Order in its capacity of Church government and biblical powers and those other powers legally recognized for religious organizations. I REV. ALVIN L. FORD of the City of Control Islip, County of Suffolk, State of New York, hereby make an irrevocable gift of all my possessions, real personal and otherwise and all my income whatsoever, regardless of the form of the income, to the Church or Order herein named, thus divesting myself of all my possessions and income whatsoever to be used for Religious purposes to support the basic Biblical Law of the Church or Order hereinafter named. All such possessions and income, if any, hereinafter being the property of the said church or order regardless of whether or not they continue to appear in my personal name.Outside employment renumberation [sic] (when directed*181 by the church or order) is not personal income, but rather income/gift to the church/order and not of the individual or the undersigned. The Church or Order designated to receive said Income and possessions is an Order of the Life Science Church designated as THE ORDER OF ALMIGHTY GOD 101016, Chapter.Therefore, I Rev. Alvin L. Ford hereby take the Vow of Poverty. NOTE: While this initial gift and succeeding gifts here provided for are irrevocable, thus complying with the irrevocable-gift-tax exempt statutes, they will revert to the giver instead of continuing in perpetuity if civil government officialdom were to "void" this act against my express will and intent as by invalidating my right to continue as a member, minister or official of the church/order, or by impeding the power of the church or order designed to designate after death succession to religious hierarchy, or by blocking the rightful tax-exempt status and maintenance of the Church or order, possessions in whatever way determined upon as in setting other religious Orders/churches, anywhere elsewhere in this created world, or by interfering in any way with Universal Law rights and benefits as accorded under the Constitution*182 of the United States, and the 1st, 2nd, 4th, 5th, 6th, 7th, 9th, 10th, 13th and 14th Amendments thereof as rightfully, along with the Declaration of Independence, accorded this Church or Order at the below date. [Notary's signature] [signature] Also attached to the Form 1040 for 1978 was a form letter dated December 5, 1978 and addressed to petitioner at 1024 Ferndale Boulevard, Central Islip, New York, and signed before a notary public on December 29, 1978, by William E. Drexler as Bishop of the Life Science Church, 5 Chief of Order of Almighty God, which stated in part: As a Minister in the Life Science Church and as a member of the Religious Order of Almighty God, you are directed and ordered to carry out the following Religious duties: 1.You are to conduct regular religious services and you are directed to make use of the attached prayer during the services. You are also to keep a record of the services and you are to make an outline report of your religious work and services every 6 months to the undersigned. 2. You are to secure and distribute the document containing the fundamental beliefs and philosophy of the Life Science Church which is the Bible*183 of the Life Science Church and the Order. A copy is presented herewith. 3. This Church is founded on the beliefs contained in the Church Bible, the Declaration of Independence and Sacred scripture and upon the principle that a man owns his own life and is bound by the sacred natural Law Golden Rule, "DO UNTO OTHERS AS YOU WOULD HAVE THEM DO UNTO YOU." You are to use your occupation as Patrolman & Supervisor as a vehicle and instrument to carry out and put into effect the principles of the Church and Order. In order to persuade and encourage other people to practice and apply this Church's Creed and philosophy and teachings to their social, private and business activities and also to the mental and spiritual sector of their lives, you are to constantly set a good example by the practice of these principles and creed yourself. 4. You are directed to keep employment and work in order to earn income to use to support yourself and your family as a vehicle to carry out the purpose of this Church and Order. 5. You are directed to use the income of the Order and Church as you see fit and reasonable to carry out the purposes of the Order. 6. You are, at all times, on and*184 off the job and work, to carry out the duties of an evangelist and on a 24 hour basis, you are to direct and promote the principles and creed of this Church and Order. 7. On all trips that you take you are to bring with you Church Bibles and material for distribution and have it available on your person for distribution. 8. You are directed to keep all information regarding Church affairs coming into your possession or knowledge in strict confidence. 9. You are to consult the undersigned, Chief of the Order on any doubtful questions that may arise. In the work of the Creator I remain, [signature] *185 Respondent advised petitioner in his notice of deficiency that wages in the amounts of $19,757.73, $26,527.14 and $34,610.79 earned in the taxable years 1978, 1979 and 1980, respectively, "constitute * * * gross income under Section 61(a) of the Internal Revenue Code notwithstanding any vow of poverty you may have taken." The notice also included additions to tax for failure to file a return and for negligence or intentional disregare of rules and regulations. OPINION Section 61(a)(1), specifically provides that compensation for services is includable in gross income. Petitioner excluded wages earned from City Transit for the three years in issue on the grounds that he become a member of the Life Science Church in 1977; that he received a letter from William Drexler executed on December 29, 1978, recognizing him as a minister in that organization; and that he, on December 29, 1978, signed a vow of poverty declaration. Petitioner's argument seems to be that nothing else is necessary to exempt his wages from income tax. He could not be more mistaken. Notwithstanding his vow of poverty, he is still subject to income tax on income earned or received*186 in his individual capacity. McGahen v. Commissioner,76 T.C. 468, 478 (1981), affd. in an unpublished opinion 720 F.2d 664 (3d Cir. 1983); Kelley v. Commissioner,62 T.C. 131 (1974).Petitioner has not shown that the income received from City Transit was earned other than in his individual capacity as a City Transit employee.Although petitioner took a vow of poverty, the manner in which he handled his financial affairs was the same both before and after that vow.The wages for petitioner's services were paid directly to him by City Transit with no restrictions as to thier use. Those wages were used by petitioner to pay his personal, family and living expenses. There was no agreement between City Transit and any church or religious organization regarding petitioner's services. Accordingly, petitioner's wages must be included in his gross income. Section 61(a)(1) and (4); Section 1.61-1(a), Income Tax Regs.; Commissioner v. Glenshaw Glass Co.,348 U.S. 426, 430 (1955). Respondent has imposed an addition to tax under section 6651(a) for failure to file a timely return. Section 6011 provides that any person liable*187 for tax "shall make a return or statement according to the forms and regulations prescribed by the Secretary." Section 1.6011-1(b), Income Tax Regs., states that "[e]ach taxpayer should carefully prepare his return and set forth fully and clearly the information required to be include therein. Returns which have not been so prepared will not be accepted as meeting the requirements of the Code." Although petitioner did file Forms 1040 for the years 1978, 1979 and 1980, the forms contain no entries for filing status or exemptions claimed; no gross, adjusted gross, or taxable income; and no income tax liability. Petitioner did attach Forms W-2 received from City Transit which indicatethat he did receive gross income. 6 Forms 1040 which do not contain sufficient data from which a taxpayer's tax liability can be computed do not constitute returns. Beard v. Commissioner,82 T.C. 766, 774-779 (1984); Thompson v. Commissioner,78 T.C. 558, 562 (1982). The fact that petitioner attached Forms W-2 to his Forms 1040 does not, under the circumstances of this case, make the Forms 1040 returns. Reiff v. Commissioner,77 T.C. 1169, 1178 (1981).*188 Clearly, the Forms 1040 submitted by petitioner do not qualify as returns. Since petitioner has furnished no evidence which would constitute reasonable cause for failue to file, respondent is sustained on this issue. Saigh v. Commissioner,36 T.C. 395, 430 (1961). Section 6653(a) provides that if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Respondent's determination is prima facie correct and must be affirmed unless petitioner proves to the contrary. Petitioner presented no evidence on this issue, and accordingly, we sustain respondent. Axelrod v. Commissioner,56 T.C. 248, 258 (1971).*189 Finally, we consider whether, under the circumstances in this case, we should award, on our own motion, damages to the United under section 6673. Section 6673, as applicable to proceedings instituted in this Court prior to January 1, 1983, reads as follows: Whenever it appears to the Tax Court that proceedings before it have been instituted by the taxpayer merely for delay, damages in an amount not in excess of $500 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax. The taxpayer's petition in this case was filed on June 2, 1982. It is set forth in full as follows: PETITION The petitioner hereby petitions for a redetermination of the deficiency set forth by the Commissioner of Internal Revenue in his audits dated March 5, 1982 and as basis for his case alleges as follows: 1. The petitioner is with legal residence now at 1024 Ferndale Blvd. Central Islip N.Y. 11722 Petitioner's taxpayer identification number is 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 The returns for the periods here*190 involved were filed with the Offices of the Internal Revenue Service at Brooklyn, N.Y. and Smithtown, N.Y.2. The Statutory Notice Statement and Notice of Deficiency were mailed to the petitioner on March 5, 1982 and were issued by the Office of Internal Revenue Service at Carle Place, New York. 3. The deficiencies as determined by the Commissioner are in income taxes for the calendar years of 1978, 1979, and 1980 in the amounts of $5,588.39, $8,480.30 and $12,706.83 respectively, of which $5,588.39, $8,480.30, and $12,706.83, respectively, is in dispute. 4. The determination of tax set forth in the said Statutory Notice Statement and the Notice of Deficiency is based upon the following errors: (a) No return filed (b) Total wages entered as taxable income in revision (c) Disregard for the Vow of Poverty 5. The facts upon which the petitioner relies, as the basis of his case, are as follows: (a) The tax levies imposed against me in the sums of $5,588.39, $8,480.30, and $12,706.83, respectively, are unagreeable and otherwise unacceptable to me. (b) Your examiner failed to comprehend my factual and legal positions. For your examiner to regard my situationer*191 [sic] separately and differently from Catholics and ministers of other church organizations makes my audit an example of a mockery of procedural due process. (c) I am motivated by a strong and sincere religious belief. I have worked hard and studied for a long time to become an ordained minister and a member of a Religious Order. I have taken an irrevocable vow of poverty. I perform all of the sacerdotal functions required by my Order. I have surrendered myself and my possessions completely unto the Lord. (d) I have not intentionally or negligently disregarded any rules or regulations and there has been no proof offered by you to the contrary. Wherefore, petitioner prays that his income tax forms be accepted as filed. [Signature] This Court consistently has held that income earned or received by a person in his individual capacity is taxable to that individual regardless of any alleged vow of poverty. Kelley v. Commissioner,62 T.C. 131 (1974); McGahen v. Commissioner,supra;Greeno v. Commissioner,T.C. Memo. 1981-521; Minckler v. Commissioner,T.C. Memo. 1981-343; White v. Commissioner,T.C. Memo. 1981-147;*192 Hall v. Commissioner,T.C. Memo. 1981-143; Young v. Commissioner,T.C. Memo. 1981-109, affd. by an unpublished order, 673 F.2d 1334 (7th Cir. 1981); Lysiak v. Commissioner,T.C. Memo. 1981-108; Lynch v. Commissioner,T.C. Memo. 1980-464, affd. without opinion (1st Cir. June 1, 1981). The stale constitutional claims raised in the petition repeatedly have been rejected by this and other courts. No reasonably prudent person could have expected this Court to reverse itself on these issues in this proceeding. We conclude that petitioner filed this case for the sole purpose of delaying payment of taxes on wages totaling $80,895.66 received in the years 1978, 1979 and 1980, which he knew were taxable to him under the income tax laws of the United States. 7 Accordingly, we find that this case was brought merely for delay and award the United States the maximum damages authorized by law, $500. 8*193 Decision will be entered for the respondent.Footnotes1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩2. All Rule references are to the Tax Court Rules of Practice and Procedure.↩3. Respondent's determination of this addition to tax was not addressed by either party at trial. We deem it to be abandoned by petitioner.↩4. Page 2 and Forms 1040 prepared for 1979 and 1980 contain similar handwritten statements which omit the words "and am an agent for my church." ↩5. In a recent case, People v. Life Science Church,113 Misc. 2d 952 (1982), 450 N.Y. Supp. 2d 664, affd. as modified 93 A.D.2d 774, 461 N.Y.Supp.2d 803↩ (1983), the Supreme Court of the State of New York permanently enjoined the Life Science Church from engaging in fraudulent and deceptive practices. The Court held that the selling of ministries was a tax avoidance scheme in violation of New York State law. Further, the State Court enjoined the church in the State of New York from representing that individuals could obtain tax exemptions by purchasing minister's credentials and attending church training sessions. The Court held that neither the church nor its ministers are entitled to a New York State tax exemption in view of the fact that the church operates in whole or in part for private purposes.6. These executed Forms 1040, with the vow of poverty notation at the bottom of page 1, the attached executed vow of poverty and the attached directive letter from William Drexler, are virtually identical to the Form 1040 and attachments prepared and submitted by each petitioner in the cases of Wert v. Commissioner,T.C. Memo. 1984-499, and Brennan v. Commissioner,T.C. Memo. 1984-500↩, filed September 18, 1984.7. Petitioner was 42 years of age at the time of trial. He commenced working for City Transit on November 9, 1954. ↩8. Petitioner is advised that sec. 6673, as amended by sec. 292(b) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. 97-248, 96 Stat. 574, and sec. 160, Tax Reform Act of 1984, Pub.L. 98-369, 98 Stat. 494, has increased the maximum damages awardable under the section from $500 to $5,000, applicable to any action commenced in the Tax Court after December 31, 1982, or is pending in this Court on the day which is 120 days after July 18, 1984, the date of the enactment of the Tax Reform Act of 1984. See Abrams v. Commissioner,82 T.C. 403 (1984), and Coulter v. Commissioner,82 T.C. 580↩ (1984), in which this Court imposed on each taxpayer the maximum amount of damages ($5,000) awardable under the law as applicable to petitions filed with this Court after December 31, 1982.