RONALD D. BRENNAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.Brennan v. CommissionerDocket No. 4189-82.United States Tax CourtT.C. Memo 1984-500; 1984 Tax Ct. Memo LEXIS 174; 48 T.C.M. (CCH) 1165; T.C.M. (RIA) 84500; September 18, 1984. Peter R. Stromer, for the petitioner. Charles W. Maurer, Jr. and Willard J. Frank, for the respondent. FEATHERSTON MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: This case was assigned to Special Trial Judge Lee M. Galloway pursuant to the provisions of section 7456 of the Code 1 and Rule 180, 2etseq. The Court agrees with and adopts his opinion which is set forth below. *176 OPINION OF THE SPECIAL TRIAL JUDGE GALLOWAY, Special Trial Judge: Respondent, in his notice of deficiency mailed to petitioner on December 30, 1981, determined a deficiency in petitioner's Federal income tax and additions to tax for the calendar year 1980 in the following amounts: ADDITIONS TO TAXYEARDEFICIENCYSEC.6651(a)(1)SEC.6653(a)1980$3,885.40$627.04$194.27The issues presented for decision are: (1) Whether this Court, as a Court created under article I of the Constitution, has jurisdiction to determine the issues in this case, and if so; (2) Whether petitioner's 1980 earnings are subject to income tax regardless of the taking by petitioner of a vow of poverty; (3) Whether petitioner is liable for an addition to tax under section 6651(a)(1) for failure to file a tax return; (4) Whether petitioner is liable for an addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations; (5) Whether damages should be awarded under section 6673 for petitioner instituting a proceeding before this Court merely for delay; (6) Whether petitioner is liable for reasonable expenses*177 under Rule 121(f) and whether counsel for petitioner should be disciplined for presenting affidavits in bad faith or for the purpose of delay. FINDINGS OF FACT Some of the facts are stipulated and are so found. The case was tried at New York, N.Y., on August 23, 1983. 3 Petitioner resided at 14 Jacob Street, Elmont, New York, at the time his petition was filed. During the taxable year 1980, petitioner was employed by the City of New York (the City) as a sanitation worker. He had been so employed by the City in this position since October 23, 1973. The City did not negotiate with any church or religious organization regarding petitioner's services nor was there a contract or other agreement between the City and any church or religious organization regarding petitioner's services. Petitioner performed services for the City during 1980 in his individual capacity. The City issued petitioner a W-2 Form at the end of the year, which reflected the amount of wages earned*178 in 1980 ($20,142.38) and amounts withheld for Federal, state and local income taxes and Federal social security taxes. The wages paid to petitioner for his services as a sanitation worker were paid by the City to petitioner with no restriction as to their use. Petitioner's earned wages were used by him to pay his personal, family, and living expenses. During 1980, petitioner was married to Valerie J. Brennan. Petitioner filed a Form 1040 (U.S. Individual Income Tax Return) for the taxable year 1980 which shows only his name, address, and social security number and lists his occupation as "minister." The Form 1040 shows no filing status or claim for exemptions; no gross, adjusted gross, or taxable income; and no income tax liability. A Wage and Tax Statement (Form W-2) was attached to the Form 1040. The Form W-2 was issued by the City of New York and addressed to "R. D. Brennan." At the bottom of page 1 of the Form 1040 is the typed statement "NOTE: I have taken an irrevocable Vow of Poverty (copy attached) and have received a directive from the head of my order (copy attached) and am therefore exempt from FEDERAL INCOME TAX." The only entry on page 2 of the Form 1040*179 is the income tax withheld of $1,377.26, for which petitioner claimed a refund in full. No other document purporting to be a Federal income tax return was filed by petitioner with respondent for the taxable year 1980. The "Vow of Poverty" attached to the Form 1040 filed by petitioner for the taxable year 1980 is a printed document which was executed by petitioner before a notary public on December 22, 1979. This form document contains blank spaces for insertion of the signator's name, address and the chapter number assigned by the Life Science Church. The document states in part: REV. RONALD D. BRENNAN, having been first duly sworn upon oath states that this is a Declaration of the gift to the Church or Order herein named, of all possessions of every description now owned or hereafter acquired to be administered by the Church or Order in its capacity of Church government and biblical powers and those other powers legally recognized for religious organizations. REV. RONALD D. BRENNAN of the City of Elmont, County of Nassau, State of New York, hereby make an irrevocable gift of all my possessions, real, personal and otherwise and all my income whatsoever, regardless of the form*180 of the income, to the Church or Order herein named, thus divesting myself of all my possessions and income whatsoever to be used for Religious purposes to support the basic Biblical Law of the Church or Order hereinafter named. All such possessions and income, if any, hereinafter will be the property of the said Church or Order regardless of whether or not they continue to appear in my personal name. Outside employment remuneration (when directed by the Church or Order) is not personal income, but rather income/gift to the Church or Order and not of the individual or the undersigned. The Church or Order designated to receive said income and possessions is the Order of the Life Science Church designated of THE ORDER OF ALMIGHTY GOD, Chapter 10584. Therefore, I, REV. RONALD D. BRENNAN hereby take the Vow of Poverty. NOTE: While this initial gift and succeeding gifts herein provided for are irrevocable, thus complying with the irrevocable gift-tax exempt statutes, they will revert to the giver instead of continuing in perpetuity if civil government officialdom were to "void" this act against my express will and intent as by invalidating my right to continue as a member, *181 minister or official of the Church or Order, or by impeding the power of the Church or Order designated to designate after death succession to religious hierarchy, or by blocking the rightful taxexempt status and maintenance of the Church or Order, possessions in whatever way determined as in setting other religious Orders/Churches, anywhere else in this created world, or by interfering any way with Universal Law rights and benefits as accorded Churches and religious orders and are the true right and privilege of any religious body under the Constitution of the United States and the 1st, 2nd, 4th, 5th, 6th, 7th, 9th, 10th and 14th Amendments thereof as rightfully, along with the Declaration of Independence, accorded this Church or Order at the below date. [Notary's signature] [signature] Also attached to the Form 1040 was a form letter dated December 13, 1979, addressed to petitioner at 14 Jacob Street, Elmont, New York 11003, signed by William E. Drexler as Bishop of the Life Science Church, 4 Chief of Order of Almighty God, which stated in part: As a Minister in the Life Science Church and as a member of the Religious Order of Almighty God, you are directed*182 and ordered to carry out the following Religious duties: 1. You are to conduct regular religious services and you are directed to make use of the attached prayer during the services.You are also to keep a record of the services and you are to make an outline report of your religious work and services every 6 months to the undersigned. 2. You are to secure and distribute the document containing the fundamental beliefs and philosophy of the Life Science Church which is the Bible of the Life Science Church and the Order. A copy is presented herewith. 3. This Church is founded on the beliefs contained in the Church Bible, the Declaration of Independence and Sacred scripture and upon the principle that a man owns his own life and is bound by the sacred natural Law Golden Rule, "DO UNTO OTHERS AS YOU WOULD HAVE THEM DO UNTO YOU." You are to use your occupation as Sanitation Man as a vehicle and instrument to carry out and put into effect the principles of the Church and Order. In order to persuade and encourage other people to practice and apply this Church's Creed and philosophy and teachings to their social, private and business activities and also to the mental and spiritual*183 sector of their lives, you are to constantly set a good example by the practice of these principles and creed yourself. 4. You are directed to keep employment and work in order to earn income to use to support yourself and your family as a vehicle to carry out the purpose of this Church and Order. 5. You are directed to use the income of the Order and Church as you see fit and reasonable to carry out the purposes of the Order. 6. You are, at all times, on and off the job and work, to carry out the duties of an evangelist and on a 24 hour basis, you are to direct and promote the principles and creed of this Church and Order. 7. On all trips that you take you are to bring with you Church Bibles and material for distribution and have it available on your person for distribution. 8. You are directed to keep all information regarding Church affairs coming into your possession or knowledge in strict confidence. 9. You are to consult the undersigned, Chief of the Order on any doubtful questions that may arise. In the work of the Creator I remain, [signature] *184 By notice of deficiency mailed on December 30, 1981, petitioner was notified by respondent that wages of $20,142.38 "constitute * * * gross income under Section 61(a) of the Internal Revenue Code notwithstanding any vow of poverty you may have taken." The notice also included additions to tax for failure to file a return and for negligence or intentional disregard of rules and regulations. OPINION Petitioner relies on the case of Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,458 U.S. 50 (1982), as the basis for his first argument that "[t]he Tax Court lacks jurisdiction to adjudicate constitutional issues such as the validity of a vow of poverty executed by a member of a religious order who engages in secular employment as directed by his ecclesiastical superiors and who earns remuneration as an agent of his religious order." Petitioner argues strenuously that "substantial constitutionally-created rights . . . must be adjudicated by Article III Courts"; that the "Tax Court lacks jurisdiction to determine constitutional issues"; that "the relationship of an individual to . . . his church" is a "private right"*185 and therefore, "the Tax Court lacks jurisdiction to adjudicate the primary issue in this case, namely, the validity of petitioner's vow of poverty." Petitioner presented the same jurisdictional argument in his Motion For Summary Judgment filed on July 25, 1983, which we denied. The same procedural issue was before the Court in Rowlee v. Commissioner,80 T.C. 1111 (1983), 5 where we held that the taxpayer's reliance on Northern Pipeline Construction Co., was misplaced stating in part that the-- Supreme Court, there, held unconstitutional the broad grant of jurisdiction to bankruptcy courts over, inter alia, State law contract claims by the Bankruptcy Act of 1978.The Supreme Court noted that the act did not constitute bankruptcy courts legislative courts under article I. (458 U.S. at 63, n. 13.) Compare sec. 7441. The Court further noted that legislative courts had been upheld where created to resolve public rights, i.e., cases between the Government and its citizens, but that the Bankruptcy Act unconstitutionally gave bankruptcy courts jurisdiction over disputes between private parties. Compare sec. 7442. [80 T.C. at 1114-1115;*186 fn.ref. omitted.] Petitioner furnishes nothing other than his conclusory statement that the issue before this Court involves the determination of his "private rights," which he defines as "the relationship of an individual to his God, his church, and his individual religious beliefs consistent with the First Amendment to the United States Constitution." The Supreme Court has described a private right as "the liability of one individual to another under the law as defined." Crowell v. Benson,285 U.S. 22, 51 (1932). The litigants before this Court are petitioner and the United States government through its representative, the Commissioner of Internal Revenue. The purpose of the litigation is to establish petitioner's correct Federal income tax liability. Accordingly, this controversy does not involve a dispute between private parties. See Rowlee v. Commissioner,supra.*187 Article III of the Constitution provides that "[t]he judicial Power of the United States shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Congress derives its authority to create "inferior courts" as part of the article III judicial power from article I, section 8, clause 9. Glidden Co. v. Zdanok,370 U.S. 530, 543 (1962). However, Congress' power to create the predecessor of this "legislative" Court, the Board of Tax Appeals, by enactment of the Revenue Act of 1924, 43 Stat. 253, 336, is given by article I, section 8, clauses 1 and 18 of the Constitution. These constitutional clauses give Congress the power to lay and collect taxes and implement that power by all necessary laws. Burns, Stix Friedman & Co. v. Commissioner,57 T.C. 392, 394 (1971). The Supreme Court has long upheld the power of Congress to establish "legislative" or "article I" courts or other tribunals in the exercise of its taxing power. In Murray's Lessee v. Hoboken Land & Improvement Co.,59 U.S. (18 How.) 272, 283 (1856),*188 the Supreme Court considered the validity of a procedure for the summary collection of accounts due from collectors of customs and held that the subject matter of the lawsuit did not involve a "judicial controversy" which required determination by an article III court. In Phillips v. Commissioner,283 U.S. 589, 595-598 (1931), the Supreme Court affirmed the longstanding principle set forth in Murray's Lessee, by stating, "[t]he right of the United States to collect its internal revenue by summary administrative proceedings has long been settled. * * * It is urged that the decision in the Murray case was based upon the peculiar relationship of a collector ofrevenue to his government. The underlying principle in that case was not such relation, but the need of the government promptly to secure its revenues. * * * The procedure [in the Phillips case] * * * satisfies the requirements of due process because two alternative methods of eventual judicial review are available." The taxpayer "may contest his liability by bringing an action * * * to recover the amount paid" if he "voluntarily pays the tax and is thereafter denied administrative*189 relief," or the taxpayer "may avail himself of the provisions for immediate redetermination of the liability by the Board of Tax Appeals," the predecessor of the United States Tax Court. Thus, in Phillips v. Commissioner,supra,the Supreme Court upheld the Court procedure for determination of income tax liabilities which has presently existed since creation of the Board of Tax Appeals in 1924. There is nothing in the "judicial power" requirement of article III of the Constitution which precludes this article I court from adjudicating tax disputes between a taxpayer and the government. See Burns, Stix Friedman & Co. v. Commissioner,supra at 398. 6 It is abundantly clear that we have jurisdiction to hear this controversy. Petitioner's status here is no different from that of other taxpayers who have become subject to our jurisdiction by filing a petition with this Court. *190 Petitioner argues that his wages received from the City are exempt from taxation because of the taking of his "vow of poverty." Petitioner relies on O.D. 119, 1 C.B. 82 (1919) to support this argument, asserting that the "IRS has continuously recognized the exclusion from income tax of a clergyman under a vow of poverty." O.D. 119 states: A clergyman is not liable for any income tax on the amount received by him during the year from the parish for which he is in charge, provided that he turns over to the religious order of which he is a member, all the money received in excess of his actual living expenses, on account of the vow of poverty which he has taken. Members of religious orders are subject to tax upon taxable income, if any, received by them individually, but are not subject to tax on income received by them merely as agents of the orders of which they are members. In McGahen v. Commissioner,76 T.C. 468, 478 (1981), affd. in an unpublished opinion 720 F.2d 664 (3d Cir. 1983), we stated: O.D. 119 is not an unqualified license exempting all clergy and religious organizations from income taxes in all circumstances. A*191 member of a religious order under a vow of poverty is not immune from Federal income tax by reason of his clerical status or his vow of poverty, but is subject to tax to the same extent as any other person on income earned or received in his individual capacity. Kelley v. Commissioner,62 T.C. 131 (1974); Rev. Rul. 77-290, 1977-2 C.B. 26. It is clear that petitioner's wages were earned in his individual capacity. Accordingly, O.D. 119 is of no assistance to petitioner. 7 Nevertheless, petitioner argues that "the validity of petitioner's vow of poverty is the keystone of petitioner's case," i.e., that "petitioner was an agent of his religious order per his vow of poverty and corollary vow of obedience." Petitioner seems to be saying that it naturally follows from his declared "vow of poverty" that he obediently carried out all "religious duties" set forth in the December 13, 1979, directive letter. When an agent receives income*192 for a principal, it is the income of the principal, not the agent. Maryland Casualty Co. v. United States,251 U.S. 342 (1920).Where there is no agent-principal relationship, however, it is axiomatic that an assignment by a taxpayer of compensation for services to another person is ineffective to relieve the taxpayer of Federal income tax liability on such compensation, regardless of the reasons for the assignment. Lucas v. Earl,281 U.S. 111 (1930). See also Helvering v. Eubank,311 U.S. 122 (1940); Helvering v. Horst,311 U.S. 112 (1940). Although petitioner took a vow of poverty, the manner in which he handled his financial affairs was the same both before and after that vow. The wages for petitioner's services were paid directly to him by the City with no restrictions as to their use. Those wages were used by petitioner to pay his personal, family and living expenses. There was no agreement between the City and any church or religious organization regarding petitioner's services. It is clear that the income received by petitioner was not received on behalf of a separate and distinct principal, *193 but was received by him in his individual capacity. Accordingly, petitioner's wages must be included in his gross income. Sec. 61(a)(1) and (4); Sec. 1.61-1(a), Income Tax Regs.; Commissioner v. Glenshaw Glass Co.,348 U.S. 426, 430 (1955). Respondent has imposed an addition to tax under section 6651(a) for failure to file a timely return. Section 6011 provides that any person liable for tax "shall make a return or statement according to the forms and regulations prescribed by the Secretary." Section 1.6011-1(b), Income Tax Regs., states that "[e]ach taxpayer should carefully prepare his return and set forth fully and clearly the information required to be included therein. Returns which have not been so prepared will not be accepted as meeting the requirements of the Code." Although petitioner did file a Form 1040 for the year 1980, the form contained no entries for filing status or exemptions claimed; no gross, adjusted gross, or taxable income; and no income tax liability. Petitioner did attach the W-2 Form received*194 from the City which indicates that he did receive gross income. 8A Form 1040 which does not contain sufficient data from which a petitioner's tax liability can be computed does not constitute a return. Beard v. Commissioner,82 T.C. 766, 774-799 (1984); Thompson v. Commissioner,78 T.C. 558, 562 (1982). The fact that petitioner attached a Form W-2 to his Form 1040 does not, under the circumstances of this case, make the Form 1040 a return. Reiff v. Commissioner,77 T.C. 1169, 1178 (1981).Clearly, the Form 1040 submitted by petitioner does not qualify as a return. Since petitioner has furnished no evidence which would constitute reasonable cause for failure to file, respondent is sustained on this issue. Saigh v. Commissioner,36 T.C. 395, 430 (1961). *195 Section 6653(a) provides that if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax an amount equal to five percent of the underpayment. Respondent's determination is prima facie correct and the burden is on the petitioner to prove this addition is erroneous. Enoch v. Commissioner,57 T.C. 781, 802 (1972). Petitioner suggests this test is erroneous, and therefore inapplicable to his case. He argues that "[i]n the instant case the IRS failed to specify any alleged acts of negligence * * * on which it based its determination of the penalty. Absent such specificity, the IRS's penalty determination is not presumed to be correct and the IRS will have failed to make out a prima facie case." Petitioner relies on Poen v. Commissioner,T.C. Memo. 1979-226, affd. in an unpublished opinion 647 F.2d 171 (9th Cir. 1981). However, petitioner in the case before us fails to note that in Poen, respondent raised the issue of an addition to tax under*196 section 6653(a) for the first time in his answer. Accordingly, respondent, not the taxpayer, had the burden of proving this issue in Poen. Such is not the case here. The section 6653(a) addition to tax was determined in the notice of deficiency. Accordingly, petitioner must meet his burden of proving that the underpayment was not due to negligence or intentional disregard of rules and regulations. Enoch v. Commissioner,supra;Axelrod v. Commissioner,56 T.C. 248, 258 (1971). Petitioner presented no evidence on this issue, and accordingly, we sustain respondent. We next consider whether, under the circumstances in this case, we should award damages to the United States under section 6673. Section 6673, as applicable to proceedings instituted in this Court prior to January 1, 1983, reads as follows: Whenever it appears to the Tax Court that proceedings before it have been instituted by the taxpayer merely for delay, damages in an amount not in excess of $500 shall be awarded to the United States by the Tax Court in its decision. Damages so*197 awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax. Taxpayer's petition in this case was filed on February 23, 1982. It is set forth in full as follows: PETITION9The Petitioner hereby petitions for a redetermination of the deficiency set forth by the Commissioner of Internal Revenue in his notice of deficiency dated Dec. 30, 1981 and as the basis for his case alleges as follows: 1. The Petitioner is Ronald D. Brennan with legal residence now at 14 Jacob St. Elmont N.Y. 11003. Petitioner's taxpayer identification number is 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. The return for the period here involved was filed with the Office of the Internal Revenue Service at Mineola, N.Y. 2. The notice of deficiency (a copy of which, including so much of the statement and schedules accompanying the notice as is material, is attached and marked Exhibit A) was mailed to the petitioner on Dec. 30, 1981, and was issued by the Office of the Internal Revenue Service at Bklyn N.Y.3.The deficiencies as determined by the Commissioner are in income taxes for the calendar year 1980, in*198 the amount of $4,706.71 of which $4,706.71 is in dispute. 4. The determination of tax set forth in the said notice of deficiency is based upon the following errors: a. The Internal Revenue Service did not comply with its administrative procedures as set forth in the Internal Revenue Code and the Regulations. b. The action of the Internal Revenue Service is in violation of Petitioner's First, Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution, as well as the Priest/Penitent and Attorney/Client privileges. c. The Internal Revenue Service erred in disregarding the bona fide character of Petitioner's Church and Order. d. The Internal Revenue Service erred in disregarding Petitioner's status as an ordained minister and a member of a religious order. e. The Internal Revenue Service erred in disregarding Petitioner's Irrevocable Vow of Poverty taken to said Church and Order. f. The Internal Revenue Service erred by failing to contact said Church and Order to verify Petitioner's official status as an agent of said Order. g. The Internal Revenue Service erred in relying upon its own "Internal/External Rule" in order to disregard Petitioner's*199 Irrevocable Vow of Poverty. h. The Internal Revenue Service erred in stating that Petitioner has negligently and intentionally disregarded rules and regulations. i. The Internal Revenue Service erred in finding that no income tax return was filed by Petitioner and then assess erroneous penalities. [sic] 5. The facts upon which the Petitioner relies as the basis of this case, are as follows: (a through i above) WHEREFORE, Petitioner prays that this deficiency notice be set aside and the refund of the funds erroneously withheld be returned to the Church and Order for whom it was earned. [Signature] This Court consistently has held that income earned or received by a person in his individual capacity is taxable to that individual regardless of any alleged vow of poverty. Kelley v. Commissioner,62 T.C. 131 (1974); McGahen v. Commissioner,76 T.C. 468, 478 (1981),*200 affd. in an unpublished opinion 720 F.2d 664 (3d Cir. 1983); Greeno v. Commissioner,T.C. Memo. 1981-521; Minckler v. Commissioner,T.C. Memo. 1981-343; White v. Commissioner,T.C. Memo. 1981-147; Hall v. Commissioner,T.C. Memo. 1981-143; Young v. Commissioner,T.C. Memo. 1981-109, affd. by an unpublished order, 673 F.2d 1334 (7th Cir. 1981); Lysiak v. Commissioner,T.C. Memo. 1981-108; Lynch v. Commissioner,T.C. Memo. 1980-464, affd. without opinion (1st Cir. June 1, 1981). The stale constitutional claims raised in the petition repeatedly have been rejected by this and other courts. No reasonably prudent person could have expected this Court to reverse itself on these issues in this proceeding. We conclude that petitioner filed this case for the sole purpose of delaying payment of taxes on $20,142.38 in wages which he knew were taxable to him under the income tax laws of the United States. Accordingly, we find that this case was brought merely for delay and award the United States the maximum damages authorized by law, $500. *201 10 Finally, respondent asserts on brief, for the first time, that "petitioner is liable for reasonable expenses under T.C. Rule 121(f), and counsel for petitioner should be disciplined, for presenting affidavits in bad faith or for purposes of delay." Rules 120-123 inclusive, are incorporated into Title XII of Court Rules, which is captioned DECISION*202 WITHOUT TRIAL. Rule 121(f) reads as follows: RULE 121. SUMMARY JUDGMENT (f) Affidavits Made in Bad Faith: Should it appear to the satisfaction of the Court at any time that any of the affidavits presented pursuant to this Rule are presented in bad faith or for the purpose of delay, the Court may order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable counsel's fees, and any offending party or counsel may be adjudged guilty of contempt or otherwise disciplined by the Court. The affidavit referred to by respondent was filed in reply to respondent's motion for summary judgment, which motion was denied by the Court. In light of the foregoing, in the exercise of our discretion, we have determined not to award expenses or take disciplinary action. Accordingly, respondent's request for expenses claimed to have been incurred by respondent as a result of the affidavit presented by petitioner is denied. Decision will be entered under Rule 155.Footnotes1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩2. All Rule references are to the Tax Court Rules of Practice and Procedure.↩3. Prior to trial, arguments were presented by both petitioner and respondent in support of their respective motions for summary judgment previously filed with this Court. Both motions were denied.↩4. In a recent case, People v. Life Science Church,113 Misc. 2d 952, 450 N.Y. Supp. 2d 664 (1982), affd. as modified 93 A.D.2d 774, 461 N.Y.Supp.2d 803↩ (1983), the Supreme Court of the State of New York permanently enjoined the Life Science Church from engaging in fraudulent and deceptive practices. The Court held that the selling of ministries was a tax avoidance scheme in violation of New York State law. Further, the State Court enjoined the church in the State of New York from representing that individuals could obtain tax exemptions by purchasing minister's credentials and attending church training sessions. The Court held that neither the church nor its ministers are entitled to a New York State tax exemption in view of the fact that the church operates in whole or in part for private purposes.5. Although petitioner's argument does comment on our decision in Rowlee v. Commissioner,80 T.C. 1111 (1983), we reject his unsupported contention that our opinion in Rowlee "misreads" Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,458 U.S. 50↩ (1982).6. See also Williams v. United States,289 U.S. 553, 580-581 (1933), wherein the Supreme Court held: since Congress, whenever it thinks proper, undoubtedly may, without infringing the Constitution, confer upon an executive officer or administrative board, or an existing or specially constituted court, or retain for itself, the power to hear and determine controversies respecting claims against the United States, it follows indubitably that such power, in whatever guise or by whatever agency exercised, is no part of the judicial power vested in the constitutional courts by the third article.That is to say, a power which may be devolved, at the will of Congress, upon any of the three departments plainly is not within the doctrine of the separation and independent exercise of governmental powers contemplated by the tripartite distribution of such powers. * * *↩7. For the latest revenue ruling relating to vows of poverty see Rev.Rul. 84-13, 1984-4 I.R.B. 5↩.8. This executed Form 1040, with the vow of poverty notation at the bottom of page 1, the attached executed vow of poverty and the attached directive letter from William Drexler is virtually identical to the Form 1040 and attachments prepared and submitted by the taxpayer in the case of Wert v. Commissioner,T.C. Memo. 1984-499↩, filed September 18, 1984.9. The form petition in this case contains exactly the same provisions as that filed by the taxpayer in Wert v. Commissioner,T.C. Memo. 1984-499↩, filed September 18, 1984.10. Petitioner is advised that sec. 6673, as amended by sec. 292(b) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. 97-248, 96 Stat.474, and sec.160, Tax Reform Act of 1984, Pub.L.98-369, 98 Stat. 494, has increased the maximum damages awardable under the section from $500 to $5,000, applicable to any action commenced in the Tax Court after December 31, 1982, or is pending in this Court on the day which is 120 days after July 18, 1984, the date of the enactment of the Tax Reform Act of 1984. See Abrams v. Commissioner,82 T.C. 403 (1984), and Coulter v. Commissioner,82 T.C. 580↩ (1984), in which this Court imposed on each taxpayer the maximum amount of damages ($5,000) awardable under the law as applicable to petitions filed with this Court after December 31, 1982.