GALE C. ABRAMS, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 1280–83.     Filed March 5, 1984.

*Cecil A. Hartman*, for the petitioner.
*R. Alan Lockyear*, for the respondent.

## OPINION

DAWSON, *Chief Judge*: This case was assigned pursuant to Delegation Order No. 8 of this Court, 81 T.C. XXV (1983), to Special Trial Judge Francis J. Cantrel for the purpose of considering and ruling on respondent's motion for judgment on the pleadings filed herein. After a review of the record, we agree with and adopt his opinion which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

CANTREL, *Special Trial Judge*: This case is before the Court on respondent's motion for judgment on the pleadings filed on September 29, 1983, pursuant to Rule 120, Tax Court Rules of Practice and Procedure.[1]

Respondent, in his notice of deficiency issued to petitioner on October 20, 1982, determined deficiencies in petitioner's Federal income tax and additions to the tax for the taxable calendar years 1980 and 1981 in the following respective amounts:

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.

|  |  | Additions to tax, I.R.C. 1954 | | |
| Years | Income tax | Sec. 6651(a)[2] | Sec. 6653(a) | Sec. 6654 |
| 1980 | $6,782.84 | $1,300.01 | $339.14 | $306.73 |
| 1981 | 9,026.00 | 2,256.50 | 451.30 | 691.57 |

The adjustments to income as determined by respondent in his deficiency notice are as follows:

|  | 1980 | 1981 |
| Salary and wages[3] | $26,762.94 | $32,582.30 |
| Exemptions | (3,000.00) | (4,000.00) |
|  | 23,762.94 | 28,582.30 |

Petitioner's legal address on the date the petition was filed was Box 3008, TR 14, Forsyth, Mont.

The petition, which was timely filed on January 18, 1983, was signed only by an attorney admitted to practice before this Court.[4] Pursuant to an order of this Court, respondent timely filed his answer on March 11, 1983, on which date the pleadings were closed.[5] Respondent's motion for judgment on the pleadings was filed more than 30 days after the pleadings were closed. See Rules 34, 36, 37, 38, and 120.

Rule 34(b) provides in pertinent part that the petition in a deficiency action shall contain "Clear and concise assignments of each and every error which the petitioner alleges to have been committed by the Commissioner in the determination of the deficiency or liability" *and* "Clear and concise lettered

---

[2]All section references are to the Internal Revenue Code of 1954 as amended, unless otherwise specified.

[3]The grounds stated by respondent in his deficiency notice for these adjustments are: "For taxable years ending December 31, 1980 and December 31, 1981, you received salaries and wages from Bechtel Power Corporation in the amounts of $26,762.94 and $32,582.30, respectively. Since you have not filed Federal income tax returns for those years, your taxable income for taxable year ended December 31, 1980 is increased $26,762.94, and your taxable income for [taxable year] December 31, 1981 is increased $32,582.30." These amounts are incorrect. The taxable income for 1980 is $23,762.94 and the taxable income for 1981 is $28,582.30.

[4]That is the only document filed by said counsel in this case notwithstanding that he has been served with a copy of each and every document filed by respondent and with a copy of an order and a notice of this Court. The Court's records reflect that petitioner himself filed another petition on Jan. 21, 1983. That petition, which contained nothing but frivolous and groundless claims, was closed out on the Court's records by order dated Mar. 4, 1983, on the ground that it was a duplication of this case.

[5]In his answer respondent, at par. 11, makes affirmative allegations of fact respecting an award of damages under sec. 6673. No reply was filed nor did respondent file an appropriate motion. Hence, these affirmative allegations are deemed denied. See Rule 37(c).

statements of the facts on which petitioner bases the assignments of error."

Petitioner at paragraphs 4 through 8 of his petition alleges—

4. The determination of tax set forth in said Notice of Liability is, apparently, based upon a jeopardy assessment issued September 14, 1982.

5. Petitioner alleges the following errors:

A. The jeopardy assessment was not justified.

B. The Administrative Review provided was a mere sham amounting to a *pro forma* approval.

C. The procedure followed by respondent was justifiable by neither the facts nor applicable law.

6. The Petitioner alleges that he has incurred no tax liability for either of the years in question, to wit: 1980 or 1981.

7. Petitioner's only income was in the form of wages which are personal property and, as such, are not subject to the imposition and collection of a direct tax which has not been apportioned as clearly required by the Constitution of the United States of America.

8. In summary then, the penalties assessed against this Petitioner are without foundation and are incorrect.

Petitioner concludes his petition with a demand for a jury trial.

It is clear beyond doubt that the petition raises *no* justiciable facts respecting any of respondent's determinations. In our view, petitioner is yet another in a seemingly unending parade of tax protesters bent on glutting the docket of this Court and others with frivolous and groundless claims (all of which have been summarily rejected by this Court and others on innumerable occasions), and he has instituted and maintained this proceeding primarily for delay. We answer his frivolous and groundless contentions, as enunciated in his petition, hereinbelow.

Respondent issued a valid notice of deficiency, a timely petition was filed, and this Court has jurisdiction of this case. Secs. 6212, 6213, and 6214.

The determinations made by respondent in his notice of deficiency are presumed correct; the burden of proof is on petitioner (not respondent) to show those determinations are wrong, and the imposition of the burden of proof is constitutional. *Welch v. Helvering*, 290 U.S. 111 (1933); *Rockwell v.*

*Commissioner*, 512 F.2d 882, 887 (9th Cir. 1975);[6] Rule 142(a).

This Court generally (as is the case here) will not look behind a deficiency notice to examine evidence used or the propriety of the Commissioner's motives or of the administrative policy or procedures involved in making his determinations. *Proesel v. Commissioner*, 73 T.C. 600 (1979); *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327 (1974).

Petitioner is not permitted to raise the issue of the validity of respondent's jeopardy assessment in this Court. Congress has, by statute, provided an avenue for review of a jeopardy assessment. Section 7429, which pertains to Review of Jeopardy Assessment Procedures, provides that such review shall be undertaken by a U.S. District Court. See *Williams v. United States*, 704 F.2d 1222, 1225 (11th Cir. 1983). In our opinion, Congress enacted section 7429 in an attempt to mitigate the harsh effects of jeopardy assessments by permitting a limited and prompt review of the propriety of jeopardy assessments. Review of a jeopardy assessment in the Tax Court was not provided by Congress, and we cannot entertain such review. The record discloses that petitioner chose to ignore the proper forum for review, and he cannot here complain that the jeopardy assessment was improper.

Petitioner has not been wrongfully denied a jury trial. "The Seventh Amendment does not apply to suits against the United States, because there was no common law action against the sovereign. *McElrath v. United States*, 102 U.S. 426, 440 (1880). Thus, it has repeatedly been held that there is no constitutional right to a jury trial in the Tax Court. *Phillips v. Commissioner*, 283 U.S. 589, 599 n. 9 (1931); *McCoy v. Commissioner*, 696 F.2d 1234 (9th Cir. 1983), affg. 76 T.C. 1027 (1981); *Lonsdale v. Commissioner*, 661 F.2d 71, 72 (5th Cir. 1981), affg. a Memorandum Opinion of this Court; *Dorl v. Commissioner*, 507 F.2d 406 (2d Cir. 1974), affg. 57 T.C. 720 (1972)." *Rowlee v. Commissioner*, 80 T.C. 1111, 1115 (1983), on appeal (2d Cir., Sept. 13, 1983).[7]

The Federal income tax laws are constitutional. Since the ratification of the 16th Amendment, it is immaterial with respect to income taxes, whether the tax is a direct or indirect

---

[6]We observe that venue on appeal of this case lies in the U.S. Court of Appeals for the Ninth Circuit.

[7]See also *Olshausen v. Commissioner*, 273 F.2d 23, 27 (9th Cir. 1959), and sec. 7453.

tax. The whole purpose of the 16th Amendment was to relieve all income taxes when imposed from apportionment and from a consideration of the source whence the income was derived. *Brushaber v. Union Pac. R.R. Co.*, 240 U.S. 1 (1916). See *Hayward v. Day*, 619 F.2d 716 (8th Cir. 1980).

Gross income means all income from whatever source derived including (but not limited to) wages. It includes income realized in any form, whether in money, property, or services. Sec. 61. Income as defined under the 16th Amendment is "gain derived from capital, from labor, or from both combined." *Eisner v. Macomber*, 252 U.S. 189, 207 (1920). Section 61 encompasses all realized assessions to wealth. *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426 (1955). See *United States v. Buras*, 633 F.2d 1356, 1361 (9th Cir. 1980), where the Court said—" 'the earnings of the human brain and hand when unaided by capital' are commonly treated as income" and "the Sixteenth Amendment is broad enough to grant Congress the power to collect an income tax regardless of the source of the taxpayer's income." (Citations omitted.) "One's gain, ergo his 'income,' from the sale of his labor is the entire amount received therefor without any reduction for what he spends to satisfy his human needs." *Reading v. Commissioner*, 70 T.C. 730, 734 (1978), affd. 614 F.2d 159 (8th Cir. 1980). "Although the wages [gross income] received by [petitioner] may represent no more than the time-value of his work, they are nonetheless *the fruit of his labor*, and therefore represent gain derived from labor which may be taxed as income." (Emphasis added.) See *Rice v. Commissioner*, T.C. Memo. 1982–129, and cases cited therein. See also *Rowlee v. Commissioner, supra* at 1119–1122, and cases cited therein; *United States v. Romero*, 640 F.2d 1014, 1016 (9th Cir. 1981). We note with interest the following passage in *Romero*—"We recognize that the tax laws bear heavily on all persons engaged in gainful activity, and recognize the right of a taxpayer to minimize his taxes by all lawful means. But Romero here is not attempting to minimize his taxes; instead he is attempting willfully and intentionally to shift his burden to his fellow workers by the use of semantics. He seems to have been inspired by various tax protesting groups across the land who postulate weird and illogical theories of tax avoidance, all to the detriment of the

common weal and of themselves." The foregoing language in *Romero* is equally applicable here.

On this record, respondent has demonstrated to our satisfaction that the pleadings do not raise a genuine issue of material fact respecting respondent's determinations for the income tax deficiencies and the additions to the tax but rather involve only issues of law. See *Russell v. Commissioner*, 60 T.C. 942, 943–944 (1973). Therefore, for the reasons expressed hereinabove, respondent's motion for judgment on the pleadings will be granted.[8]

The final matter we consider is whether, in the circumstances here extant, we should, on our own motion, award damages to the United States under section 6673.[9] We addressed the very heart of this matter in September of 1977 in *Hatfield v. Commissioner*, 68 T.C. 895, 899 (1977), when we stated in clear and unequivocal language—

In recent times, this Court has been faced with numerous cases, such as this one, which have been commenced without any legal justification but solely for the purpose of protesting the Federal tax laws. This Court has before it a large number of cases which deserve careful consideration as speedily as possible, and cases of this sort needlessly disrupt our consideration of those genuine controversies. Moreover, by filing cases of this type, the protesters add to the caseload of the Court, which has reached a record size, and such cases increase the expenses of conducting this Court and the operations of the IRS, which expenses must eventually be borne by all of us.

Many citizens may dislike paying their fair share of taxes; everyone feels that he or she needs the money more than the Government. On the other hand, as Justice Oliver Wendell Holmes so eloquently stated: "Taxes are what we pay for civilized society." *Compania de Tabacos v. Collector*, 275 U.S. 87, 100 (1927). The greatness of our nation is in no small part due to the willingness of our citizens to honestly and fairly participate in our tax collection system which depends upon self-assessment. Any citizen may resort to the courts whenever he or she in good faith and with a colorable claim desires to challenge the Commissioner's determination; but that does not mean that a citizen may resort to the courts merely to vent his or her

---

[8]While respondent presents argument for an award of damages under sec. 6673 in his motion and in his Memorandum of Authorities, which was also filed on Sept. 29, 1983, nowhere in either document does he formally move for such an award. Nonetheless, on this record, we must and do consider an award of damages, and we do so immediately hereinafter.

[9]Sec. 6673, as in effect for proceedings instituted in this Court prior to Jan. 1, 1983, provided— "Whenever it appears to the Tax Court that proceedings before it have been instituted by the taxpayer merely for delay, damages in an amount not in excess of $500 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax."

anger and attempt symbolically to throw a wrench at the system. Access to the courts depends upon a real and actual wrong—not an imagined wrong—which is susceptible of judicial resolution. General grievances against the policies of the Government, or against the tax system as a whole, are not the types of controversies to be resolved in the courts; Congress is the appropriate body to which such matters should be referred.[10]

While we did not award damages in *Hatfield v. Commissioner, supra,* we issued this warning—"but if tax protesters continue to bring such frivolous cases, serious consideration should be given to imposing such damages [under section 6673]." *Hatfield v. Commissioner, supra* at 900. Similar warnings were promulgated in *Crowder v. Commissioner,* T.C. Memo. 1978–273, and *Clippinger v. Commissioner,* T.C. Memo. 1978–107. Tax protest petitions continued to be filed with this Court with increased frequency and, finally, upon motion of respondent, we began awarding damages to the United States in appropriate cases. See *Wilkinson v. Commissioner,* 71 T.C. 633 (1979),[11] which was reviewed by the Court; *Greenberg v. Commissioner,* 73 T.C. 806 (1980).[12] Shortly after *Greenberg* was issued we, for the first time, awarded damages in a proper circumstance on our own motion. *Sydnes v. Commissioner,* 74 T.C. 864, 870–873 (1980), affd. 647 F.2d 813 (8th Cir. 1981).[13] Despite these opinions, petitions filed merely for delay continued to overburden this Court's docket. Taking cognizance of this fact, on June 15, 1981, we aptly and cogently stated—

[10]The language in the first paragraph quoted from *Hatfield v. Commissioner,* 68 T.C. 895, 899 (1977), above, so true when stated, is all the more impelling today.

[11]In *Wilkinson v. Commissioner,* 71 T.C. 633 (1979), where we traced the history of sec. 6673 and noted that on numerous occasions taxpayers had been warned of the potential ramifications of proceeding with a frivolous case, we concluded that "We believe that the time to act has arrived." *Wilkinson v. Commissioner, supra* at 642. There, a damage award of $500 was made.

[12]See also *Lynch v. Commissioner,* T.C. Memo. 1983–428; *Goodrich v. Commissioner,* T.C. Memo. 1983–414; *Cornell v. Commissioner,* T.C. Memo. 1983–370; *Stamper v. Commissioner,* T.C. Memo. 1983–248; *Sommer v. Commissioner,* T.C. Memo. 1983–196, dismissed (7th Cir., Dec. 28, 1983); *Jacobs v. Commissioner,* T.C. Memo. 1982–198; *Senesi v. Commissioner,* T.C. Memo. 1981–723, affd. 709 F.2d 1507 (6th Cir. 1983); *Swann v. Commissioner,* T.C. Memo. 1981–236, dismissed (9th Cir., Jan. 15, 1982). The predecessor of the statute quoted in note 9 *supra,* which in essence, contained virtually identical language, was enacted by Congress in 1926, some *58* years ago. Sec. 911, Pub. L. 20 (69th Cong., 1st Sess.), 44 Stat. 9, 109.

[13]See also *Tuckett v. Commissioner,* T.C. Memo. 1983–575; *Jacobs v. Commissioner,* T.C. Memo. 1983–490; *Perkins v. Commissioner,* T.C. Memo. 1983–474, on appeal (6th Cir., Oct. 13, 1983); *Burton v. Commissioner,* T.C. Memo. 1983–455; *Vickers v. Commissioner,* T.C. Memo. 1983–429; *Mele v. Commissioner,* T.C. Memo. 1983–387; *Ballard v. Commissioner,* T.C. Memo. 1982–56; and *Graves v. Commissioner,* 698 F.2d 1219 (6th Cir. 1982), affg. without published opinion T.C. Memo. 1981–154, where we said—"those protesters who want to use this Court as their soapbox from which to deliver speeches should pay the toll of $500 for the damages they are inflicting on the system and on other taxpayers."

It may be appropriate to note further that this Court has been flooded with a large number of so-called tax protester cases in which thoroughly meritless issues have been raised in, at best, misguided reliance upon lofty principles. Such cases tend to disrupt the orderly conduct of serious litigation in this Court, and the issues raised therein are of the type that have been consistently decided against such protesters and their contentions often characterized as frivolous. The time has arrived when the Court should deal *summarily* and *decisively* with such cases without engaging in scholarly discussion of the issues or attempting to soothe the feelings of the petitioners by referring to the supposed "sincerity" of their wildly espoused positions. [*McCoy v. Commissioner,* 76 T.C. 1027, 1029–1030 (1981), affd. 696 F.2d 1234 (9th Cir. 1983). Emphasis added.]

The Congress of the United States in its expressed desire to stem "the ever-increasing caseload of the Tax Court," amended section 6673 and made that amendment applicable "to Tax Court cases begun on or after January 1, 1983."[14]

Section 6673, as amended, provides—

Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax.

Thus, when this Court, in its discretion, determines that a proceeding has been instituted or maintained by the taxpayer primarily for delay or that a taxpayer's position in a proceeding before this Court is frivolous *or* groundless, damages of up to $5,000 "shall be awarded to the United States" under the mandate of the statute. It is clear under the statute that taxpayers can delay proceedings in this Court by means other than raising frivolous or groundless positions. Delay by such other means may, likewise, subject a taxpayer to an award of damages.

This Court is not the only court that has considered awarding damages or other costs, either on its own motion or

---

[14]The Committee reports to sec. 292, Pub. L. 97–248, state, in pertinent part—

"the committee is concerned with the ever-increasing caseload of the Tax Court and the impact that this legislation may have on that caseload. * * * In addition, the committee decided to increase the damages, i.e., penalty, that may be assessed against a taxpayer when proceedings are instituted for delay, and to expand the circumstances under which the Tax Court may assess those damages. [H. Rept. 97–404, at 11 (1982).]"

on motion of the Commissioner, in a proper case. In a tax protester situation where one of the issues was whether the U.S. Constitution forbids taxation of compensation received for personal services, the Fifth Circuit Court of Appeals stated in late 1981—

Appellants' contentions are stale ones, long settled against them. As such they are frivolous. Bending over backwards, in indulgence of appellants' pro se status, we today forbear the sanctions of Rule 38, Fed. R. App. P. We publish this opinion as notice to future litigants that the continued advancing of these long-defunct arguments invites such sanctions, however.. [*Lonsdale v. Commissioner*, 661 F.2d 71, 72 (5th Cir. 1981), affg. T.C. Memo. 1981–122.][15]

In *Knighten v. Commissioner*, 702 F.2d 59 (5th Cir. 1983), affg. per curiam an unreported order and decision of this Court, the Court of Appeals, following its warning, took action. There, damages were not sought nor awarded in our Court. Damages were sought by the Commissioner and awarded in the Court of Appeals.[16] Subsequently, the Court of Appeals in *Steinbrecher v. Commissioner*, 712 F.2d 195 (5th Cir. 1983), affg. T.C. Memo. 1983–12, awarded damages on its own motion.[17] Still later, that Court in *Parker v. Commissioner*, 724 F.2d 469 (5th Cir. 1984), affg. T.C. Memo. 1983–75, assessed double costs against Mr. Parker while issuing the following warning—"This time we do not award *damages* but sound a cautionary note to those who would persistently raise arguments against the income tax which have been put to rest for years. The full range of sanctions in Rule 38 shall hereafter be summoned in response to a totally frivolous appeal." (Emphasis added.)

The Court of Appeals for the Ninth Circuit has, in a summary and decisive manner, awarded double costs in several tax protester cases on its own motion. On July 7, 1982, in *Edwards v. Commissioner*, 680 F.2d 1268, 1271 (9th Cir. 1982), affg. per curiam an unreported decision of this Court, the Court said—

---

[15]Rule 38, Fed. R. App. P., provides—

Rule 38. Damages for Delay

If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.

[16]Double costs were assessed against Mr. Knighten.

[17]Double costs were assessed against the Steinbrechers.

Meritless appeals of this nature are becoming increasingly burdensome on the federal court system. *We find this appeal frivolous,* Fed. R. App. P. 38, and accordingly award double costs to appellee [the Commissioner of Internal Revenue]. * * * [Citations omitted; emphasis added.]

Accord *McCoy v. Commissioner,* 696 F.2d 1234 (9th Cir. 1983), affg. 76 T.C. 1027 (1981); *Barmakian v. Commissioner,* 698 F.2d 1228 (9th Cir. 1982), affg. without published opinion an unreported order and decision of this Court; *Martindale v. Commissioner,* 692 F.2d 764 (9th Cir. 1982), affg. without published opinion an unreported order and decision of this Court.[18]

It is now certain that all Courts will no longer tolerate the filing of frivolous appeals. On June 13, 1983, the Supreme Court, for the first time, invoked the provisions of its rule 49.2, which the Court adopted in 1980, and ordered an appellant to pay damages for bringing a frivolous appeal.[19] In *Tatum, Elmo C. v. Regents of Nebraska-Lincoln* (No. 82–6145), the Court issued the following order: "The motion of respondents for damages is granted and damages are awarded to respondents in the amount of $500.00 pursuant to Supreme Court Rule 49.2"[20]

The direction of this nation's highest court is crystal clear—that no court should permit frivolous or groundless appeals, not only in discrimination suits but in any other area of litigation, including Federal income taxation. The language of amended section 6673 is equally clear.

Here, petitioner has instituted these proceedings and has asserted as his defense to the Commissioner's determinations nothing but frivolous and groundless contentions. Petitioners with genuine controversies were delayed while we considered this case.

When the costs incurred by this Court and respondent are taken into consideration, the maximum damages authorized by the statute do not begin to indemnify the United States for the expenses which petitioner's frivolous and groundless

---

[18]In none of the four cases decided by the Ninth Circuit were damages sought or awarded in this Court.

[19]Rule 49.2 of the Supreme Court's rules provides—"When an appeal or petition for writ of certiorari is frivolous, the Court may award the appellee or the respondent appropriate damages."

[20]In that case, Mr. Tatum had brought a series of civil rights suits against the University of Nebraska charging that the University had discriminated against him by failing to provide adequate housing.

action has occasioned. Considering the waste of limited judicial and administrative resources caused by petitioner's action, even the maximum damages authorized by Congress are wholly inadequate to compensate the United States and its other taxpayers. These costs must eventually be borne by all of the citizens who honestly and fairly participate in our tax collection system.

On this record, we find that petitioner's position in this proceeding is frivolous and groundless and that this proceeding was instituted and maintained primarily for delay. Therefore, in our discretion, we conclude that the maximum damages authorized by law ($5,000) are appropriate, and damages in that amount will be awarded to the United States under section 6673.[21]

> *An appropriate order and decision will be entered.*

---

[21]Petitioner's counsel filed no response to respondent's motion although he was afforded an opportunity to do so by the Court, as indicated hereinbefore.