WAYNE STYRON ELLIOTT AND SANDRA ARLENE ELLIOTT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Elliott v. Commissioner
Docket No. 16945-83.
United States Tax Court
T.C. Memo 1985-493; 1985 Tax Ct. Memo LEXIS 142; 50 T.C.M. (CCH) 1111; T.C.M. (RIA) 85493; September 19, 1985. Peter R. Stromer, for the petitioners. *143 Debra Bowe and Steven Mopsick, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION "KORNER, Judge: Respondent determined deficiencies in income tax and additions to tax against petitioners as follows: Additions to Tax
Year
Deficiency
§ 6653(a) [1]
1979
$17,312
$865
1980
16,578
829
1981
8,637
432
The issues which the Court must decide are as follows: 1. Whether petitioners are entitled to claimed deductions for the years in issue for charitable contributions, in the respective amounts of $38,104, $37,617 and $18,982. 2. Whether petitioners are liable for additions to tax under section 6653(a) for each of the years in issue. 3. Whether under the facts of this case the Court should award damages in favor of the United States under section 6673. Some of the facts herein were stipulated, and such stipulation, together with accompanying exhibits, is incorporated herein by this reference. *144 At the time of filing their petition herein, petitioners, husband and wife, were residents of Orland, California. Petitioners filed joint Federal income tax returns for each of the years 1979 through 1982. For convenience, our remaining findings of fact and opinion will be grouped together on the issues to which they relate. 1. The Charitable Contributions Issue.
The Universal Life Church, Inc. of Modesto, California (hereinafter "ULC, Inc."), issued Charter number 26011 to petitioners in 1977 to establish a local congregation of that church. During the years in issue, ULC, Inc. held exempt status from Federal income taxes under the provisions of section 501(c)(3). [2]
In the years 1979, 1980, and the early part of 1981, Congregation 26011 was located at petitioners' home address in Agoura, California (outside Los Angeles). In 1981, petitioners moved to Orland, California (90 miles north of Sacramento), taking Congregation 26011 with them and locating it at their new home address in Orland. The "Charter Agreement," under which petitioners' Congregation *145 26011 was chartered by ULC, Inc., discloses that petitioner Sandra Elliott was named as Pastor of the congregation, Amada Drylie (petitioner Sandra Elliott's mother) as secretary, and petitioner Wayne Elliott as treasurer of the local congregation. Said Charter Agreement further designates James W. Elliott and Jan Johnson Elliott (not otherwise identified) as "directors." Although petitioner Sandra Elliott was designated by the Charter Agreement as "pastor" of Congregation 26011 at all times before us, she was inactive with regard to the congregation and all church activity. In early 1978, petitioners opened a checking account with the Bank of America branch at Agoura, California in the name of "Agoura Chapel ULC." Toward the end of March 1981, and coinciding with their move to Orland, California, petitioners closed this account and transferred the balance to a new account with the Bank of America branch at Orland. This second account was carried in the name of "Agoura Chapel ULC, Universal Life Church." No one but petitioners had authority to withdraw funds from either of these accounts. During at least some part of the period before us, petitioners also maintained a "money market" *146 savings account with the Bank of America in the name "Agoura Chapel ULC," in which the only persons with authority to withdraw funds were petitioners and Amada Drylie. During the years 1979, 1980 and 1981, petitioners paid from one or the other of the above church checking accounts various expenses of a personal nature, such as payments on the mortgage on petitioners' home, electric, gas and water utilities charges, trash service, pest control, and the wages of a domestic servant for petitioner Sandra Elliott. Such disbursements for personal expenses totaled $18,124.83 in 1979, $17,393.76 in 1980 and $16,224.85 in 1981. In addition, in 1979, disbursements from the church account totaling $6,500 were made for the benefit of Mr. and Mrs. Robert E. Elliott, Jr., who were petitioner Wayne Elliott's parents. In their joint income tax returns for the years before us, petitioners claimed deductions for contributions to "Universal Life Church," in the respective amounts of $38,104, $37,617 and $18,982. Such alleged contributions were represented by checks made payable variously to "Agoura Chapel ULC," "Agoura Chapel Universal Life Church," or "Universal Life Church." In all cases, such *147 checks were deposited to the checking account maintained for local Congregation 26011, over which petitioners had sole control.Upon audit, respondent disallowed the claimed contributions, on the grounds that (1) it was not established that such amounts had been paid in the years in question; (2) it was not established that petitioners' local congregation was a qualified charitable donee within the meaning of sections 170(c) and 501(c)(3); and/or (3) it had not been established that no part of the earnings of petitioners' local congregation did not inure to their personal benefit. Petitioners had the burden of proof for the years 1979, 1980 and 1981 to establish that they were entitled to the deductions disallowed by respondent. Welch v. Helvering,290 U.S 111 (1933); Rule 142(a). They failed completely to carry this burden of proof. The record herein is devoid of any evidence showing that petitioners made completed gifts of their claimed contributions to anyone. What the record shows is that petitioners' claimed contributions consisted of various deposits made by them to bank accounts for their local Congregation 26011, which bank accounts were solely and exclusively *148 under their own control. Since they never parted with dominion and control over the subject matter of the alleged gifts, we must hold that no completed gifts were made. Davis v. Commissioner,81 T.C. 806 (1983), affd. by unpublished opinion, 767 F.2d 931 (9th Cir. 1985), and cases cited therein.[3]
*149 Our holding above, in and of itself, is sufficient to destroy petitioners' claimed deductions for the years in question. We further note, however, that there is no evidence in this record to establish that petitioners' local congregation 26011 was either organized or operated so as to qualify it under the provisions of section 501(c)(3), as an organization to whom tax deductible contributions could be made, within the meaning of section 170(c). We further note that the record herein establishes that a substantial amount of the total deposits to the bank accounts of the local congregation in each of the years in question was apparently expended for the personal benefit of petitioners. Such expenditures, as noted in our findings of fact, constituted 48 percent of the total contribution claimed by petitioners for 1979, approximately 46 percent of that claimed for 1980 and approximately 85 percent of the total contributions claimed by petitioners for 1981.See Davis v. Commissioner,supra.
Respondent is accordingly sustained on this issue. 2. Additions to Tax Under Section 6653.
For the years 1979, 1980 and 1981, respondent determined that petitioners *150 were liable for the five percent addition to tax provided by section 6653(a) for "negligence or intentional disregard of rules or regulations (but without intent to defraud), * * *." Petitioners had the burden of proof on this issue. Bixby v. Commissioner,58 T.C. 757 (1972); Rule 142(a). Petitioner Wayne Elliott, who testified at trial [4] impressed us as an intelligent and articulate man. He had a college education and was a commercial airline pilot, flying Boeing 747 airplanes. As we said in Davis v. Commissioner,supra,81 T.C. at 820-821, We have repeatedly sustained the section 6653(a) addition in cases involving purported charitable contributions to a "church" that, as here, simply represented use of the funds for personal and family expenses. [The Court here cited nine previous opinions of this Court involving the same situation.] Petitioners struck us as reasonably intelligent, well-educated individuals. As such, they must have known that they could not claim as charitable contributions deductions amounts they had simply channeled from [petitioners] and used for their nondeductible personal, family, and living expenses. * *151 * * [Footnote reference omitted.] We sustain respondent with respect to this issue. 3. Award of Damages Under Section 6673.
For the years 1979, 1980 and 1981, respondent urges that damages should be awarded in favor of the United States under the provisions of section 6673. [5]
A review of the record herein shows that such an award of damages is clearly justified. This Court has been faced with numerous cases, such as this one, with factual situations not significantly different, involving attempts by taxpayers to use the "pretext of a church *152 to avoid paying their fair share of taxes, * * * [and to] resort to the courts in a shameless attempt to vindicate themselves." Miedaner v. Commissioner,81 T.C. 272, 282 (1983). Such cases have uniformly been held by this Court to be entirely without merit, and by now, the continued assertion of these frivolous and meritless claims can no longer be considered to be serious efforts by bona fide taxpayers to vindicate a legitimate position. They are, in short, frivolous. See Larsen v. Commissioner,765 F.2d 939 (9th Cir. 1985), affg. an order of dismissal of this Court; Kalgaard v. Commissioner,764 F.2d 1322 (9th Cir. 1985), affg. T.C. Memo. 1984-283. The volume of frivolous cases of this type, of which petitioners' is one, have added to the overwhelming caseload in this Court, and have cost both this Court as well as respondent considerably in additional time and effort in order to dispose of them. As the Court of Appeals for the Fifth Circuit stated, "Appellants' contentions are stale ones, long settled against them. As such they are frivolous." See Lonsdale v. Commissioner,661 F.2d 71, 72 (5th Cir. 1981), *153 affg. a Memorandum Opinion of this Court. Whether or not petitioners herein were aware of the total lack of merit in their claims when they filed their petition is not controlling. Prior to the time this case came to trial, the record herein shows that respondent had advised petitioners repeatedly that their claims were without merit, and had warned petitioners that if they persisted in their frivolous appeals, respondent would seek to invoke damages against them under section 6673. Petitioners ignored these warnings. Petitioners argue vigorously in opposition to the imposition of any damages herein under section 6673, contending that the imposition of such damages is unconstitutional, in that it infringes upon the petitioners' rights under the First Amendment of the Constitution. [6] This argument approaches the same level of frivolity as petitioners' underlying claims themselves. Section 6673 in its present form was enacted by the Tax Equity and Fiscal Responsibility Act (TEFRA), *154 Pub. L. 97-248, section 292, 96 Stat. 572. It makes no attempt to infringe upon the right of any citizen who, acting seriously and in good faith, wishes to petition this Court for redress of grievances which he has against the Commissioner. As we said in Hatfield v. Commissioner,68 T.C. 895, 899 (1977), however, Any citizen may resort to the courts whenever he or she in good faith and with a colorable claim desires to challenge the Commissioner's determination; but that does not mean that a citizen may resort to the courts merely to vent his or her anger and attempt symbolically to throw a wrench at the system. * * * [Citations omitted.] In Connor v. Commissioner,     F.2d    , 85-2 USTC par. 9598 at 89,542, 56 AFTR2d 85-5647 at 85-5648 (2d Cir. Aug. 6, 1985), the Court stated: "A taxpayer has no constitutional right to bring frivolous lawsuits." The rights guaranteed to a citizen by the First Amendment to the Constitution are important and fundamental, but they are not absolute. They may not be used to subvert and destroy those very rights which the Amendment was designed to safeguard. Many years ago, in a case involving First *155 Amendment rights of free speech, Mr. Justice Holmes put it very well: But the character of every act depends upon the circumstances in which it is done * * * The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic. It does not even protect a man from an injunction against uttering words that may have all the effect of force * * * The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent. It is a question of proximity and degree. * * * [Schenck v. United States,249 U.S. 47, 52 (1919).] The right of petitioners to come to this Court to petition their Government for the redress of grievances does not include the right to attempt to bog down the functioning of this Court and subvert the orderly administration of justice. When faced with this situation, this Court, as well as other courts, has the right to take remedial action, both inherently and as authorized by Congress. See Larsen v. Commissioner,supra *156 and Kalgaard v. Commissioner,supra (both involving frivolous appeals of the type involved herein); Sparrow v. Commissioner,748 F.2d 914 (4th Cir. 1984); Tatum v. Regents of Nebraska-Lincoln,462 U.S. 1117 (1983); Bell v. Commissioner, 85 T.C.     (filed Sept. 5, 1985). The Bill of Rights is designed to guarantee legitimate rights of all citizens, but it is not a suicide pact. As we said in Abrams v. Commissioner,82 T.C. 403, 412 (1984): The direction of this nation's highest court is crystal clear -- that no court should permit frivolous or groundless appeals, not only in discrimination suits but in any other area of litigation, including Federal income taxation. The language of amended section 6673 is equally clear. Here, petitioner has instituted these proceedings and has asserted as his defense to the Commissioner's determinations nothing but frivolous and groundless contentions. Petitioners with genuine controversies were delayed while we considered this case. On this record, we conclude that petitioner's position for the years 1979, 1980 and 1981 was entirely without merit, and, even if it could be said *157 that the petition was not instituted initially on frivolous grounds, its maintenance in the face of overwhelming contrary authority and in the fact of repeated warnings by respondent constitutes a clear showing that it was "maintained by the taxpayer primarily for delay" within the meaning of section 6673. We accordingly award damages to the United States under section 6673 in the amount of $5,000. Decision will be entered for respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. ULC, Inc.'s exempt status was revoked on September 4, 1984. Announcement 84-90, 1984-36 I.R.B. 32↩.
3. At trial, petitioners sought to introduce into evidence alleged "receipts" from ULC, Inc. showing contributions by petitioners in the claimed amounts for the years 1980 and 1981, but in a somewhat lesser amount for the year 1979. Petitioners' witness Robert Imbeau, who described himself as a member of the board of directors of ULC, Inc., authenticated his signature on the forms. The witness testified that said receipts were prepared from regularly kept books and records of ULC, Inc. and under his supervision, and were supplied to donors to evidence their contributions. Further examination of the witness, however, revealed that the "records" of ULC, Inc. which were the basis and the foundation of the proffered receipts were documents prepared by petitioners' local congregation, and were not records kept in the ordinary course of business by ULC, Inc. at all. Such alleged underlying documents were not offered in evidence. We have repeatedly held that ULC, Inc. and its various chapters or congregations are not a single organization for tax purposes, but are separate. Hall v. Commissioner,729 F.2d 632 (9th Cir. 1984), affg. T.C. Memo. 1982-337; Davis v. Commissioner,81 T.C. 806 (1983), affd. by unpublished opinion, 767 F.2d 931 (9th Cir. 1985), and cases cited therein. The "receipts" were accordingly refused admission into evidence as inadmissible hearsay. They were clearly not within any of the exceptions of Rules 803 or 804 of the Federal Rules of Evidence.Kalgaard v. Commissioner,T.C. Memo. 1984-283, affd. 764 F.2d 1322 (9th Cir. 1985); Davis v. Commissioner,supra;Hall v. Commissioner,supra.↩
4. Petitioner Sandra Elliott, who was apparently incapacitated, did not testify at trial.↩
5. Sec. 6673 provides: Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax.↩
6. As pertinent herein, the First Amendment provides: Congress shall make no law * * * abridging * * * the right of the people * * * to petition the Government for a redress of grievances.↩