CARL A. SAMUELSON, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Samuelson v. Commissioner
Docket No. 16398-84.
United States Tax Court
T.C. Memo 1985-561; 1985 Tax Ct. Memo LEXIS 71; 50 T.C.M. (CCH) 1409; T.C.M. (RIA) 85561; November 14, 1985. Carl A. Samuelson, Jr., pro se. James E. Gray, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: This case is before the Court on respondent's motion for summary judgment pursuant to Rule 121 [1] and respondent's motion for an award of damages under section 6673. Respondent issued a notice of deficiency to petitioner on February 29, 1984. In the notice of deficiency respondent determined deficiencies in petitioner's Federal income taxes and imposed additions to tax as follows: Year
Deficiency
Sec.6653(b)(1) [2]
Sec.6653(b)(2)
Sec.6654
1978
$705.00
$352.50
$23.27
1979
3,646.00
1,823.00
94.10
1980
4,325.88
2,162.94
180.27
1981
2,642.00
1,321.00
1982
4,070.00
2,035.00 *
161.55
*72 Petitioner filed a timely petition in this case only for the taxable years 1981 and 1982. Therefore, our jurisdiction and respondent's motion for summary judgment relate only to these years. In his original petition, petitioner claimed that respondent erred in his determinations for the following reasons: 4. The commissioner erred in determining that the petitioner was a person liable for income tax without basis of fact in the record, and further erred in determining that fictions of filing status and of income could be utilized to deny and disparage petitioners substantive rights, privileges and immunities. 5. The commissioner erred in determining that petitioner was a bondsman or servant performing services under the direction and control of a master, and that petitioner received compensation for such services deemed to be employee wages or income, and in which the commissioner had an implied interest through an arrangement with the master or employer, voluntarily entered into by petitioner. 6. The commissioner erred in determining that petitioner *73 failed or was not timely in fulfilling alleged and known duties and obligations, or that he was in any way negligent, or that an underpayment of tax occurred, or that any facts he provided were false or fraudulent, or that he was subject to any penalty for his rightful conduct. 7. The commissioner erred in determining that certain forms W-2 issued by contracting parties under petitioners name accurately described factual matters relevant and material to alleged deficiencies and alleged income taxes of petitioner. 8. The commissioner erred in knowingly and deliberately making false allegations into deceptions and fictions, cloaking them by color of law with a presumption of fact and a presumption of correctness, then proceeded to determine alleged deficiencies that are self serving, erroneous, false and fraudulent. 9. The commissioner erred by knowing misapplication of the law that was deliberately injurious, materially prejudicial, and done in bad faith. Further, the commissioner fraudulently asserted the application of law and rules upon petitioner that were never published, noticed, or made effective according to law. The "facts" on which petitioner based his assignments *74 of error were: 11. Petitioner is a natural, private, sovereign individual. He conducts his affairs pursuant to common right as a sole proprietor, not for any purpose of commerce or objective for profit, and not upon any knowing request, receipt, or exercise of government privilege, franchise and benefit. 12. Petitioner received various amounts shown as consideration for the contracted sale and delivery of personal property, as shown in Table 2. The property was acquired by gift at or shortly before the sale, and was not held as capital. 13. The cost basis petitioner inherited from the donor of the property sold was unknown and indeterminable. A substituted cost basis was determined for each of the properties to be equal to their fair market value just before the sale, corresponding to the time the properties were acquired by, and in the hands of, the donor, and as shown in Table 2. 14. The amounts received by petitioner from the sale of property were received as consideration pursuant to a voluntary contractual relationship with other competent contracting parties, and was part express, implied or both. 15. The expenses incurred by petitioner in the receipt, sales *75 and deliveries of the personal property, and in the conduct of his natural and private life, are summarized in Table 2. 16. The forms W-2 utilized by the commissioner herein as a basis, contained a scheme of fictions and deceptive classifications that are potentially fraudulent, created by the commissioner upon self-serving and circular conclusions, and made solely for tax purposes and not as any part of the normal business purpose or records of any of petitioner's contracting parties. The Table 2 amounts for 1981 and 1982 referred to in the petition are the same as the amounts determined by respondent to be gross income from wages paid by the Public Works Commission of Fayetteville, North Carolina, and from retirement income paid by the U.S. Army. Petitioner filed an amended petition on July 26, 1984, which presented identical arguments. On February 1, 1985, respondent filed an answer to the amended petition. In his answer to the amended petition, respondent alleged as follows: 18. FURTHER ANSWERING THE AMENDED PETITION, and in support of the determination that the underpayment of tax required to be shown on each of the petitioner's income tax returns for the taxable years *76 1981 and 1982, is due to fraud, respondent alleges: a. For the taxable years 1978, 1979, 1980 and 1982, petitioner did not file federal income tax returns. For the taxable year 1981, petitioner filed an incomplete Form 1040A, to which he attached a Form W-2 from his employer, Fayetteville Public Works Commission. A copy of the Form 1040A is attached hereto as Exhibit B. b. During the taxable year 1978, petitioner received retirement pay of $6,550.68 from the United States Army (hereinafter referred to as "USA"), which he failed to report. c. During the taxable year 1979, petitioner received wages from the Fayettevile, North Carolina Public Works Commission (hereinafter referred to as "PWC") of $10,260.64 and retirement pay of $7,170.12 from USA, all of which he failed to report. d. During the taxable year 1980, petitioner received wages of $8,541.21 from PWC, retirement pay of $8,120.66 from USA, and received a gain of $4,776.00 from the transfer of a house to his wife as part of a separation agreement, all of which he failed to report. e. During the taxable year 1981, petitioner received wages of $13,189.12 from PWC and retirement pay of $8,921.88 from USA. Petitioner *77 reported only the wages of $13,189.12 from PWC. Petitioner fraudulently and with the intent to evade tax failed to report the retirement pay of $8,921.88 which he received from USA. f. During the taxable year 1982, petitioner received wages of $12,635.34 from PWC and retirement pay of $9,408.40 from USA, all of which he fraudulently and with the intent to evade the payment of tax failed to report. g. For the taxable years 1978, 1979 and 1980, petitioner had federal income taxes withheld from his wages in the following amounts: $0.00, $1,149.63 and $1,197.48. These amounts are substantially less than the federal income tax liabilities petitioner incurred for the taxable years 1978, 1979 and 1980, which are the following amounts: $705.00, $3,646.00 and $4,325.88. h. For the taxable years 1981 and 1982, petitioner fraudulently and with the intent to evade the payment of tax had federal income taxes of only $2,196.39 and $1,928.37, respectively, withheld from his wages. These amounts are substantially less than the federal income tax liabilities of $2,642.00 and $4,070.00, respectively, which petitioner incurred for the taxable years 1981 and 1982. i. On March 9, 1983, petitioner *78 submitted to his employer a Form W-4 on which he claimed exemption from federal income tax. A copy of the Form W-4 is attached hereto as Exhibit C. j. Petitioner fraudulently and with the intent to evade tax failed to report his correct income tax liability for the taxable year 1981 in the amount of $2,642.00, and fraudulently and with the intent to evade tax failed to report his income tax liability for the taxable year 1982, in the amount of $4,070.00. k.All or a part of the underpayments of tax by petitioner for the taxable years 1981 and 1982 is due to fraud. Petitioner did not file a reply to the answer to the amended petition, and on April 26, 1985, respondent filed a "Motion for Entry of Order that Undenied Allegations in Answer to Amended Petition be Deemed Admitted." Petitioner was notified of respondent's motion and informed that he could file a reply on or before May 20, 1985. Petitioner did not file a reply, and respondent's motion was granted by Order dated May 29, 1985. Respondent filed his motion for summary judgment and motion for award of damages on August 15, 1985. Petitioner was served with a copy of each of these motions by respondent.By Order dated September 9, 1985, petitioner *79 was given 30 days in which to respond to the motions. Petitioner did not submit any response. Motion for Summary Judgment
A decision will be rendered on a motion for summary judgment if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b). A fact is material if it "tends to resolve any of the issues which have been properly raised by the parties." C. Wright, A. Miller & M. Kane, 10A Federal Practice and Procedure: Civil, sec. 2725 (2d ed. 1983). [3] Our rules require that the petition contain clear and concise assignments of each error which petitioner alleges to have been committed by respondent. Rule 34(b)(4); Jarvis v. Commissioner,78 T.C. 646, 658 (1982). Any issue not raised in the assignments of error shall be deemed conceded. Rule 34(b)(4); Jarvis v. Commissioner,supra, at 658. *80 Here, petitioner has not raised any justiciable facts or issues with the exception of his contention that his actions were not fraudulent. The assignments of error and "facts" supporting such assignments asserted by petitioner are not unfamiliar to us. We have, in fact, repeatedly rejected petitioner's arguments as meritless. See, e.g., Abrams v. Commissioner,82 T.C. 403, 405 (1984); Rowlee v. Commissioner,80 T.C. 1111, 1119-1122 (1983). Although petitioner did allege that his actions were not fraudulent, the fact of fraud for each of the years at issue has been conclusively established through petitioner's deemed admissions. Doncaster v. Commissioner,77 T.C. 334, 337 (1981). Consequently, we find that there is no genuine issue of material fact, and respondent is entitled to summary judgment as a matter of law. Motion for Damages
Section 6673 provides, in pertinent part: Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess *81 of $5,000 shall be awarded to the United States by the Tax Court in its decision. * * * Here, petitioner in his petition and in his amended petition raises only worn-out meritless arguments. Petitioner, of course, has every right to contest respondent's assertion of fraud. But petitioner's course of conduct convinces us that he did not come before this Court in order to challenge the fraud determination.His failure to prosecute his case coupled with the clearly frivolous petition and amended petition convinces us that petitioner's primary purpose was not to utilize this Court as a forum to litigate a genuine tax controversy but only to express his dissatisfaction with the Federal income tax system and to delay the payment of his Federal tax obligations. Consequently, upon a review of this record, we find that this proceeding was instituted and maintained primarily for delay and that petitioner's position in this proceeding as to the underlying deficiencies was frivolous and groundless. We accordingly award damages to the United States in the amount of $5,000.00. To reflect the foregoing, An appropriate order and decision will be entered.
Footnotes
1. All rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue.↩
2. Sec. 6653(b) is the applicable provision for the years prior to 1982. * 50 percent of interest due on $2,141.63↩
3. Summary judgment under Rule 121 is derived from rule 56, Federal Rules of Civil Procedure. Hence, in any question turning on the interpretation of Rule 121, the history of rule 56, Fed. R. Civ. P., and the authorities interpreting such rule are considered by the Tax Court. See Hoeme v. Commissioner,63 T.C. 18, 21 (1974); Shiosaki v. Commissioner,61 T.C. 861, 862↩ (1974).