T.C. Memo. 1996-370

UNITED STATES TAX COURT

MICHAEL AND MICHELLE ROUGH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8354-94.                    Filed August 12, 1996.

Michael Rough, pro se.

<u>Gregory M. Hahn</u>, for respondent.

MEMORANDUM OPINION

DINAN, <u>Special Trial Judge</u>:   This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

---

[1]   All section references are to the Internal Revenue Code
in effect for the taxable year in issue.  All Rule references are
to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' 1991 Federal income tax in the amount of $1,283.

After concessions[2], the issues for decision are: (1) Whether petitioners underreported their income for 1991; and (2) whether respondent's oral motion for a penalty under section 6673 should be granted.

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioners resided in Federal Way, Washington, on the date the petition was filed in this case. Hereinafter, references to petitioner in the singular are to Michael Rough.

In 1991, petitioner sold Amway products for which he was compensated in the form of a sales commission. In 1991, in connection with his sales commissions from his Amway business, petitioner received a Form 1099 from Don and Roberta Langeliers in the amount of $1,957.54 (Langeliers Form 1099) and a Form 1099 from Sean and Jade Mullaney in the amount of $2,614.61 (Mullaney Form 1099).

On their 1991 Federal income tax return, petitioners failed to report petitioner's sales commission income or any related expenses in connection with petitioner's Amway sales business.

---

[2] Petitioner Michael Rough conceded that he received commissions from his Amway sales business as determined by respondent with the exception of two checks totaling $94.62.

Petitioner acknowledged that during the year in issue he received Amway sales commissions from the Langeliers and Mullaneys. Furthermore, petitioner testified that he received the Forms 1099. However, petitioner stated that the Langeliers Form 1099 was received 6 or 9 months after petitioners' 1991 Federal income tax return had been filed. With respect to the Langeliers Form 1099, petitioner conceded that he received the amounts reported except for two checks totaling $94.62 (missing checks). The documentation that supported the Langeliers Form 1099, with the exception of the missing checks, was admitted into evidence as respondent's Exhibit E.

Mr. Langeliers testified at trial that the missing checks were issued to petitioner and cleared his account, but that he was unable to obtain copies of the checks. Petitioner contends that Mr. Langeliers was unable to produce the missing checks referred to as check number 2737 and 2738 in the amounts of $26.10 and $68.52, respectively. However, petitioner produced no records to support his testimony that he did not receive the missing checks. Furthermore, petitioner was given ample opportunity to cross-examine Mr. Langeliers; during petitioner's cross-examination of Mr. Langeliers, instead of addressing the notice of deficiency, petitioner attempted to introduce into evidence a document called "CODE BREAKER - The § 83 Equation", which was marked for identification as petitioners' Exhibit 3.

Petitioners' Exhibit 3 is a tax protester harangue.  (More hereinafter about petitioners' Exhibit 3, for identification.)

The Court, on four separate occasions, invited petitioner to address the issues contained in the notice of deficiency and Mr. Langeliers' testimony as a fact witness.  In pertinent part, the four occasions when the Court so instructed petitioner are as follows:

THE COURT: We don't want to keep this witness on the stand --

MR. ROUGH: Well --

THE COURT: -- for anything other than his testimony. His testimony was that he gave you these checks that are in evidence now as E, that he made two other checks to you.  I believe he stated the amounts of the checks or the number of the check, and he's been unable to obtain copies of those checks.  That is the direct testimony.  And your cross-examination will be restricted to the witness' direct testimony.

MR. ROUGH: Okay.

THE COURT: So the questions you are about to ask him I assume are going to be in regard to the two checks which he could not locate.

MR. ROUGH: Okay.  Forgive me, for I don't know the correct words on how to - how to say this, so I'll just say it in my own words. Exhibit A [marked for identification as Exhibit 3] will allow me to prove that any -- any citizen off the street would end up agreeing with me after -- after asking questions and referring to Exhibit A, that the label of tax protester attached to me  by the respondent is an incorrect statement.

And therefore, I think, not being able to submit these to the Court is prevent -- they're preventing me due process.

\* \* \* \* \* \* \*

THE COURT: This witness has been sitting here listening to this for awhile. He's not going to sit here too much longer. You have the direct examination which I've highlighted - highlighted. I've told you what it is. If you have questions on cross-examination, I want to hear them and I want to hear them succinctly and quickly so that this witness can be excused.

\* \* \* \* \* \* \*

THE COURT: This man is here to answer your questions as to his testimony, not whether or not you can stipulate to them and so forth and so on. You've already told us that you wouldn't do that. That's in the record. What questions do you have to ask him about the checks?

\* \* \* \* \* \* \*

THE COURT: \* \* \* What questions do you have to ask of this witness with regard to his direct testimony?

MR. ROUGH: I have finished with the witness, your Honor, and I would like --

THE COURT: The witness --

MR. ROUGH: -- to concede with these proceedings to go directly to federal district court to get my answers.

Under circumstances in which he was given every opportunity to do so, petitioner failed to ask why Mr. Langeliers was unable to produce checks 2737 and 2783.

It is readily apparent that petitioner had no intention to dispute the fact that he had received from Mr. Langeliers in 1991 commissions in the amount of $94.62, a fact which he would not admit. It is also readily apparent that petitioner attempted to use Mr. Langliers as a foil on cross-examination to insinuate into the record his cherished Exhibit 3 for identification, which would allow him to expostulate upon the inanities contained therein.

Respondent's determinations are presumed correct, and petitioner bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner has failed to prove that respondent's determination of his unreported income for 1991 is incorrect. Indeed, as we have noted supra, petitioner did not even attempt to prove that respondent's determination was incorrect. We hold for respondent on this issue.

We turn now to respondent's oral motion to award a penalty against petitioner under section 6673(a). In order to better understand our disposition of respondent's motion, we deem it appropriate to place the issue in perspective.

In 1995, David Myrland (Myrland) authored a tax protester diatribe--"CODE BREAKER - The § 83 Equation". The text of Myrland's tirade consists of 62 pages.

On May 20, 1994, petitioner filed his "Petition Under 90 Day Notice of Deficiency; Wage Earner, Contractor".

On June 2, 1995, petitioner filed with the Court a motion for summary judgment. In support of his motion for summary judgment, petitioner filed a memorandum consisting of a one-page "Introduction" and 62 following pages. The 62 following pages were a verbatim transcript of Myrland's 1995 tax protester diatribe, except for technical and irrelevant changes made to paragraph 3, page 42; paragraph 2, page 53; paragraph 1, page 57; and paragraph 1, page 58. In addition, Myrland had added page 53(a) to his diatribe which is not here relevant.

Upon full consideration of petitioners' June 2, 1995, motion for summary judgment, including a perusal of petitioners' "carbon copy" memorandum of Myrland's tax protester diatribe, the Court denied petitioners' motion for summary judgment on June 7, 1995.

When this case was called for trial, petitioner appeared at counsel table with a person who, petitioner stated, "is strictly just a helper to help me organize this mountain of evidence that I'm about to present."

Petitioner's "helper" identified himself as "David Russell Myrland, centralized authorization file No. 8005-84830R, as an unenrolled preparer with the Internal Revenue Service, not employed by them, registered as an unenrolled preparer under that number."

Mr. Myrland was ordered by the Court to "move to the back of the bar", and did so.

Petitioner was not to be deterred. As noted supra, petitioner attempted to use respondent's witness, Mr. Langeliers, as a foil to again subject the Court to Myrland's sottish opus (Exhibit 3 for identification). He was not permitted to do so.

Section 6673(a)(1) authorizes the Tax Court to require a taxpayer to pay to the United States a penalty not in excess of $25,000 whenever it appears that proceedings have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceeding is frivolous or groundless.

The record in this case amply demonstrates that petitioners were not interested in disputing the merits of the deficiency in income tax as set forth in the notice of deficiency. Rather, the record clearly demonstrates that petitioners attempted to use this Court as a forum to protest the tax laws of this country and to impose upon this Court their misguided tax protester views.

Petitioners' position, demonstrated at trial, consists solely of their reliance on tax protester rhetoric and legalistic gibberish. We are also convinced that petitioners instituted and maintained this proceeding primarily, if not exclusively, for purposes of delay. Having to deal with this matter wasted the Court's time, as well as respondent's. Moreover, taxpayers with genuine controversies were delayed. Petitioner's conduct in this case was patently egregious.

In view of the foregoing, we will grant respondent's oral motion to exercise our discretion under section 6673(a) and require petitioners to pay a penalty to the United States in the amount of $500.  <u>Crain v. Commissioner</u>, 737 F.2d 1417, 1417-1418 (5th Cir. 1984); <u>Coulter v. Commissioner</u>, 82 T.C. 580, 584-586 (1984); <u>Abrams v. Commissioner</u>, 82 T.C. 403, 408-411 (1984).

To reflect the foregoing,

<u>An appropriate order and</u>

<u>decision will be entered</u>.